THE MAYOR, ETC., OF MONTEZUMA *vs.* MINOR, surviving partner.

[Hall, J., being disqualified, Judge Branham, of the Rome circuit, presided in his stead.]

1. The report of the board of health of the town of Montezuma, condemning a mill-pond as a nuisance, or their neglect or refusal to perform this duty, being necessary to the exercise of jurisdiction by the mayor and council, it would have been better if the report had been made before the summons was issued, but as it was made before the trial and before any decision was rendered, it was a mere irregularity which does not affect the real merits of the case.

2. The mayor and council of Montezuma may act summarily upon the report of the board of health, and cause nuisances to be abated within the town; but where the mayor and council were not acting summarily, but had summoned defendants before them to show cause why a mill-pond should not be declared a nuisance, and if so found, why it should not be abated, and an issue was thus made between the town, alleging the mill-pond to be a nuisance and the defendants denying it, the report of the board of health was hearsay and not admissible in evidence. The members of the board were competent witnesses, and if their testimony was desired, they should have been sworn.

3. Evidence of a tender of money designed to prevent the rebuilding of a dam alleged to be a nuisance related to a proposition with a view to compromise, and was not admissible.

4. The mayor and council of Montezuma have jurisdiction to determine whether a mill-pond within the town is a nuisance, and although they may have employed an attorney to prosecute the case, this alone would not disqualify them from trying it. Nor would the interest which such officers have in common with other citizens of the town, by reason of their residence therein, disqualify them. But where a member of council has a personal interest in the result of the case, he is not competent to preside in it.

5. If it should appear that a mill-pond within the town of Montezuma is prejudicial to or endangers the health of the town or any part thereof, it ought to be declared a nuisance and abated. If it does not prejudice or endanger the health of the town, but the sickness there is produced by other causes, it should not be disturbed.

October 2, 1884.

Municipal Corporations. Judge. Montezuma. Nuisance. Evidence. Compromise. Jurisdiction. Mills.

Before Judge FORT. Macon Superior Court. December Term, 1883.

To the report contained in the decision it is only necessary to add the following:

From a judgment of the Mayor, etc., of Montezuma, declaring a mill-pond to be a nuisance and ordering it abated, Minor, surviving partner of Drumright & Minor, and the executors of the deceased partner, sued out a certiorari, alleging, in brief, the following errors:

(1.) That the judgment was contrary to law.

(2.) Because the Mayor, etc., erred in refusing to continue the case, on motion, because of the absence of witnesses.

(3.) Because they overruled written objections going to show them disqualified, and refused to hear proof of such objections.—These were based on the ground that the mayor and each of the council had previously given evidence against plaintiffs in certiorari on the identical question on trial, and thus had formed and expressed an opinion as to it; that they had employed an attorney to prosecute the action to abate the pond as a nuisance, had interviewed witnesses, and had openly declared that it was a nuisance, and that they intended to abate it; that J. E. DeVaughn, one of the council, owned land flooded by the pond, and had said that the pond was a nuisance, and that if the Mayor, etc., would not abate it, he could and would have the water removed from his land.

(4.) Because the Mayor, etc., admitted the report of the board of health of Montezuma, condemning the pond as a nuisance, in evidence, over objection of plaintiffs in certiorari.—The objection was based on the grounds that the appointment of the board was not proved from the minutes and the genuineness of the report proved; that it showed on its face that it was subsequent to the commencement of the proceedings; that each of the board had given evidence against plaintiff in certiorari, and had

formed and expressed an opinion, and were not impartial, and were appointed with a view to their expression of such opinion.

(5.) Because the Mayor, etc., rejected evidence to show that the pond was essential to the value of the mill; that damage would result from its destruction; and that no adequate compensation had been paid or tendered.

(6.) Because B. B. Hinton, Esq., the attorney employed by the Mayor, etc., consulted with them in secret during the progress of the trial and while they were deliberating on the case.

(7.) Because the Mayor, etc., admitted evidence of two witnesses, Wilson and Jarnagin, to the effect that, acting for the council, they had offered to Drumright, one of the firm of Drumright & Minor, who owned the mill, $800.00 if he would not rebuild the dam after it broke; that he offered to take $1,000.00; that he agreed to take $800.00, but subsequently " backed out." Wilson testified that this proposition was to compromise the matter.—The objection was that Drumright was dead, and that propositions of compromise were inadmissible.

(8.) Because the Mayor, etc., have no power summarily to destroy the property of plaintiff in *certiorari*, without trial by common law.

(9.) Because the Mayor, etc., refused to rule out the testimony of Wilson and Jarnagin, as above stated, on motion.

(10.) Because the Mayor, etc., allowed the witness, Jarnagin, to testify that he offered, through Wilson to Drumright, $800.00 not to rebuild the dam, and refused to allow him to be asked the value of the mill and dam and how much the breaking of it would damage the plaintiffs in *certiorari*.

The Mayor, etc., answered the *certiorari*. They explained the refusal to continue, stating that time was allowed, and efforts were used by them to obtain the evidence of an absent witness, but owing to the facts that the witness refused to attend, saying that he had no opinion on the subject (he

being a medical expert), that he lived out of the town, and when served with an attachment, was in another county, it was impossible to secure his presence. They denied that it was offered to show that the appointment of the board of health was not genuine, and asserted that the record showed that it was, and that the board reported before the trial. They admitted that the members of the board of health had expressed an opinion that the pond was a nuisance before their appointment, but asserted that almost every other intelligent citizen had done the same thing, and that it would have been impossible to have appointed a board of health not directly interested and composed of members who had not formed or expressed an opinion to that effect. They denied, however, having appointed the board with a view to such opinion.

In regard to the offer to pay $800.00 to Drumright if the dam should not be rebuilt, they answered that plaintiff in *certiorari* had shown by several witnesses that no offer of compensation had been made; and in rebuttal, this offer to pay was allowed to be shown. They held that the death of Drumright made no difference, as it appeared that Wilson and Jarnagin were acting for both parties, and were alive. They denied secret consultations, and asserted that the trial was fair and impartial.

A traverse was filed to the answer; but the bill of exceptions contains a copy of a consent order that the judge should pass a final judgment on the petition and answer, and an agreement of counsel, which was made part of the answer.

The judge sustained the *certiorari*, and ordered a new trial. The Mayor, etc., excepted.

B. B. HINTON, for plaintiffs in error.

J. W. HAYGOOD; W. A. HAWKINS; E. G. SIMMONS, for defendant.

BRANHAM, Judge.

This is a proceeding under the charter of Montezuma (Acts 1871, p. 123) to abate a mill-pond within the limits of the town, on the ground that it is a public nuisance, injurious to the health of that community. The evidence, on the trial of the case, was conflicting. The mayor and council adjudged the pond to be a nuisance, and ordered it abated. The defendants *certioraried* the case; the superior court sustained the *certiorari*, and ordered a new trial, and the plaintiff in error excepted.

1. After the decision of the equity cause by this court between these parties (70 *Ga.*, 191) was rendered, by which the jurisdiction of the mayor and council to abate nuisances within the town, on the report of the board of health, was sustained, and on the 12th day of April, 1883, the case came on again to be heard. The report of the board of health, condemning the pond as a nuisance, was made on the 9th day of April, 1883, after the defendants had been summoned, but before the hearing of the case. This report, or the neglect or refusal of the board of health to perform this duty, is necessary to the exercise of jurisdiction by the mayor and council, and it would have been better if the report had been made before the summons was issued. But as the report was made before the trial, and before any decision was rendered, it was a mere irregularity which does not affect the real merits of the case.

2. This report was "tendered," on the trial, by counsel for the plaintiff in error, and objected to by counsel for defendants in error on several grounds, none of which, under the view we take of the case, were very material. The mayor and council overruled the objections, and ordered the report to be read in evidence. The statute provides that the mayor and council may act summarily upon the report of the board of health, and cause nuisances to be abated within the town. Such summary action, in ordinary cases, would be unobjectionable; but in this case, the

mayor and council were not acting summarily. They had summoned the defendants before them to show cause "why the Drumright and Minor mill-pond should not be declared a nuisance, and if so found, why it should not be abated." The town alleged it to be a public nuisance, the defendants denied it; and this was the sole issue between the parties on the trial. The report of the board of health, therefore, was not legal evidence. It was only hearsay. The members thereof were competent witnesses, and if their testimony was desired, they should have been sworn, that the defendants might have had an opportunity to cross-interrogate them. It is true there was no express objection on this ground to the admission of the report in evidence; but, as it was ordered to be read in evidence, it is best that its legitimate use and effect should be hereafter understood.

3. All that portion of the testimony in relation to the alleged tender of $800.00 to Drumright, in his lifetime, designed to prevent the re-building of the dam, related to nothing more than a proposition made with a view to a compromise of the controversy. It was not legal evidence. Code, §3789. It ought to have been ruled out, and the evidence confined to the issue, whether the pond was a public nuisance or not.

4. This court has held in 70 *Ga.*—before cited—that the mayor and council of the town has jurisdiction of this question. Though that body may have employed an attorney to prosecute the case, this alone would not disqualify them to try the case. *Tift vs. County of Dougherty* (present term). Nor would the interest which such officers have, in common with other citizens of the town, by reason of their residence therein, disqualify them. Dillon on Mun. Corporations, Sec. 360–1, and Georgia cases there cited. But this court has not held that a judge, personally interested in the result of a suit, is competent to preside therein on the trial of the case. Defendants alleged "that J. E. DeVaughn, one of the council, owned land flooded by the pond, and had said that the pond was a nuisance, and if the mayor

and council would not abate the same, he could have the water removed from his land, and intended to do so," and they offered to prove these facts. This motion was over-ruled, and DeVaughn presided on the trial of the case. He has since filed a bill against Minor, which was determined in his favor at the September term, 1883, of this court. 72 *Ga.*, 208.

If the facts alleged by defendants to be true, in relation to DeVaughn's interest in the issue on trial, are true, then he was not qualified to preside either as judge or juror in the case. " So tender is our law of bias on the part of the noblest and purest in behalf of self-interest, that no judge is permitted to sit in a case in which he has any interest." *Mayor, etc., of Macon vs. Huff,* 60 *Ga.*, 224–5 ; Code, §205. If DeVaughn is pecuniarily or personally interested in the issue, let him retire from the court, and let the mayor and remaining aldermen, who have no more interest in the question than that of any other good citizen of the town, proceed with the trial.

5. "A particular use of property may sometimes be for-bidden, where, by a change of circumstances and without the fault of the owner, that which was once lawful, proper and unobjectionable, has now become a public nuisance, endangering the public health or public safety. Mill-dams are sometimes destroyed on this ground." See Cooley Con. Limitations, 595 ; Miller *vs.* Craig, 3 Stockton, 175. If, on a re-hearing of the case, it should appear that the pond is prejudicial to, or endangers the health of the town, or any part thereof, then it ought to be declared a nuisance and abated. If it does not prejudice or endanger the health of the town ; on the contrary, if the sickness there is produced by other causes, the right of private property ought to be respected, and the pond should not be disturbed. See Milne *vs.* Davidson, 16 Am. Dec., note, 194; Baker *vs.* Boston, 22 Am. Dec., 421.

What we have said is sufficient to show that the judg-

ment of the superior court was right. We do not deem it necessary to decide the other questions raised in the case. Judgment affirmed.