## FIDELITY AND DEPOSIT COMPANY OF BALTIMORE *v.* EXCHANGE BANK OF MACON.

1. While a judgment in this State, in a general sense, binds all the property, both real and personal, of the person against whom it is rendered, the lien of such judgment, in the special sense which prevents the alienation of the property of the debtor after its rendition, attaches only to such property of the debtor as is capable of seizure and sale under execution based upon such judgment.

2. Choses in action are not subject to seizure and sale under executions based upon ordinary judgments, and can only be reached by the judgment creditor through a garnishment, or some other collateral proceeding; and inasmuch as such garnishment or collateral proceeding is necessary to fix the lien of the judgment so as to make it effective, an assignment of the chose in action by the debtor before the institution of such collateral proceeding passes to the assignee the property of the debtor in the chose in action assigned, freed from the lien of a general judgment previously rendered against the assignor.

Argued February 19-20,—Decided March 22, 1897.

Garnishment.    Before Judge Ross.    City court of Macon.    March term, 1896.

*Hall & Hammond* and *Hardeman, Davis & Turner*, for plaintiff.    *Bacon, Miller & Brunson*, contra.

ATKINSON, Justice.

Upon the petition of creditors of Macon Construction Company, filed in Bibb superior court, the properties of the Georgia Southern & Florida Railroad Company had been seized and placed in the hands of W. B. Sparks, who had been duly appointed receiver of all the assets of the Macon Construction Company. Upon the final administration of the assets of that corporation, upon the 23d day of September, 1895, as final compensation of the receiver for services rendered in and about the discharge of his duties, the court, by an appropriate order, awarded to him the sum of $20,500.00, and accordingly gave direction to Gresham,

Hardeman and Nisbet, who were the commissioners appointed to manage and direct the sale of the properties, that they should, out of funds in their hands, pay to him in final satisfaction, as aforesaid, the sum above mentioned. Sparks, being indebted to the Exchange Bank of Macon, upon the day following the grant of this order, drew and delivered to it a draft in its favor upon said commissioners in the following words:

"J. S. McTighe & Co. et al.       Petition of W. B. Sparks,
                                  receiver of the Ga. So.
                                  & Fla. R. R. Co., for
                 *v.*             final compensation.
                                  Auditor's report, and
                                  decree of court
The Macon Construction Co. et al. thereon.

"To Messrs. Thos. B. Gresham, Jno. L. Hardeman, and R. A. Nisbet, Com'rs:

"Gentlemen,—You will please pay to the Exchange Bank of Macon, Ga., the sum of $17,500.00 out of the amount found in my favor by the auditor in the above stated cause, and which report was approved by the court on September 23d, 1895. This order will be your voucher for said payment. [Signed] W. B. Sparks."

Dated September 24th, 1895.

Upon the delivery of this draft by Sparks to the cashier of the Exchange Bank, that institution delivered to him notes and other evidences of indebtedness held by the bank against Sparks for sums aggregating $20,000.00 and upward. The Fidelity & Deposit Company of Baltimore having, on the 2d day of July, 1892, obtained a judgment against Sparks for $13,580.21 principal, and $850.97 interest upon this judgment, on the 1st day of November, 1895, sued out summons of garnishment returnable to the city court of Macon, which was served on the commissioners on November 2d, 1895. Thereafter, on the 11th day of November, 1895, the Exchange Bank of Macon claimed the said fund in the hands of the commissioners to the ex-

tent of $17,500.00, and dissolved the garnishment by giving bond under the statute. On December 16th, 1895, the garnishees answered that they were not indebted. Answered further, that the .funds held by them originally as commissioners, in so far as Sparks was concerned, had been assigned by him to the Exchange Bank of Macon before· the service of the summons of garnishment in that case. They answered further, that upon the dissolution of the· garnishment by the Exchange Bank of Macon as claimant of the fund, the amount represented in the draft above· named had been by them paid to the Exchange Bank of· Macon. They further answered that, being officers of the court in the administration of funds committed to their· care, they were relieved from process of garnishment; and· that the fund in question having been awarded to Sparks· as his compensation for services rendered by him in his· capacity as a public officer, such fund could not be reached' by process of garnishment. When the claim case came on to be heard, it was submitted to the court without the intervention of a jury; and upon consideration of the facts as· they are above stated, the court awarded the fund to the claimant. To the judgment so awarding the fund the garnishing creditors excepted, and upon that judgment assign error here. We have not deemed it necessary to determine whether the commissioners appointed by Bibb superior court could be held to answer elsewhere than in that court a summons of garnishment, nor whether the fund awarded to the receiver as his compensation was protected against the process of garnishment by virtue of his position as an officer of the court; and for this reason, we have not stated herein the evidence introduced upon the trial which bore exclusively upon those aspects of the case.

1. The first question to be considered is, whether the bank acquired title to the fund represented in the draft drawn in its favor, and whether, under the circumstances,.

the drawing of the draft amounted in law to an assignment of that fund to it by the drawer. It was drawn for a sum certain, upon a particular fund, upon ample consideration and under circumstances which manifested a purpose upon the part of the drawer presently to pass the title to the drawee; for, upon the faith and credit of the draft, immediately upon its being drawn the drawee surrendered to the drawer promissory notes and other evidences of indebtedness, accepting the draft in extinguishment of such demands; so that whether before its acceptance the draft operated as a legal assignment of the fund upon which it was drawn or not, it was yet, according to the decision of this court in the case of *Jones* v. *Glover*, 73 *Ga.* 484, a good equitable assignment of the fund. In that case the doctrine is stated as follows: "In order to infer an equitable assignment, such facts or circumstances must appear as would not only raise an equity between the assignor and assignee, but show that the parties contemplated an immediate change of ownership with respect to the particular fund in question; not a change of ownership when the fund should be collected or realized, but at the time of the transaction relied upon to constitute the assignment." Speaking further in that case, the court says: "Had there been proof of an actual consideration paid or promised by Jones (the drawee) for the draft, the jury could well have made the inference, from that and the other facts, that an intention existed when the draft was drawn to make Jones the owner of the fund and to divest Maddox (the drawer) of the substantial ownership of the same though his legal title would still have been intact." Tested by the doctrine in that case, there was a complete equitable assignment of this particular fund to the assignee upon the date that the draft was drawn and before the process of garnishment was served. This being true, no lien would attach to the fund in consequence of the subsequent suing out of the garnishment proceeding by a pre-existing creditor of Sparks

subsequent to the assignment. At most he would hold, after the drawing of the draft and the delivery to him of the securities in consideration therefor, only a bare legal title; and this legal title would not avail his creditor against the claim of the person to whom the fund had been equitably assigned. For, in the case of *Haas v. Old National Bank*, 91 *Ga.* 307, it was held: "In a proceeding by garnishment, a mere formal legal title to the fund in controversy in the debtor of the garnishing creditor will not prevail over a substantial equitable title which a third person acquired from such debtor before the garnishment was served. If the debtor himself could not hold or recover the fund as against such third person, his creditor ought not to be allowed to do so. Whatever is not rightfully and justly the property of a debtor, though he may have the formal legal title to it, ought not to be applied to the payment of his debts. He ought rather to be treated as holding such title as he had in trust for the real owner, and not for the benefit of himself or of his own creditors."

It was urged upon us, however, with great earnestness by the learned counsel for plaintiff in error, that inasmuch as the judgment upon which the garnishment proceeding was issued was of older date than the assignment of the fund garnished, no assignment of this fund could be made by the debtor which could operate to discharge it from the lien of the judgment. In support of this position, the following provisions of our code were relied upon: "All judgments obtained in the superior, justices' or other courts of this State shall be of equal dignity, and shall bind all the property of the defendant, both real and personal, from the date of such judgment, except as otherwise provided in this Code." Civil Code, §3580. "A future interest in personalty cannot be seized and sold, but the lien of judgments will attach thereto, so far as to prevent alienation, before the right to present possession accrues." Civil Code, §5452. According to our conception of the meaning of these

sections of the code, they bind in a general sense only such property of the debtor as is capable of actual seizure, sequestration and delivery, in satisfaction of the creditor's demand. In that sense it operates as a lien upon choses in action, and even money of the debtor, when it is capable of legal appropriation to the discharge of the debtor's obligation. It is, therefore, that when courts have seized and hold for distribution among creditors the property of the debtor, whether it consist of real property, personal property in the stricter sense, or mere money and choses in action, the liens of judgments generally will be respected; and in the distribution of a fund arising therefrom, the courts will recognize the liens of judgments, and appropriate the fund in hand according to the priority of such liens. It has been held in this State, that where moneys have been reduced to the possession of the court by the collection of choses in action, the liens of pre-existing judgments attach thereto, and upon distribution, are entitled to preference according to their dignity and priority, but the liens of such judgments cannot be held to so attach to money or choses in action as that, proprio vigore, they will prevent the alienation by the debtor of that class of property before the suing out of a summons of garnishment, or some other collateral proceeding necessary to fix absolutely the lien of such judgment so as to remove it from the personal dominion and control of the debtor. To hold that the lien of a general judgment would so attach, and to place such a construction upon the sections of the code above quoted, would lead to the most absurd consequences, and as well to the virtual repeal of section 5353 of the Civil Code, which provides as follows: "A judgment has no lien upon promissory notes in the hands of the defendant, nor are choses in action liable to be seized and sold under execution, unless made so specially by statute." If in this special sense a judgment lien attach to all the property of the debtor, it would attach as well to money in his pocket, be-

cause money, like choses in action, is property of the debtor
in a general sense, and no man in the most ordinary com-
mercial transactions in life would be safe in receiving from
a debtor, against whom there was an existing judgment,
money in satisfaction of any demand which he might hold
against the debtor; for, if the money were impressed with
the lien, whoever received it would receive it subject to the
lien, and the judgment creditor would have the right to
follow it up and assert his lien in the hand of whomsoever
it might be capable of being identified. It is manifest that
no such intention ever entered the legislative mind; and
therefore we reach the conclusion, that the lien of a judg-
ment in the special sense which prevents the transfer of
property of the debtor after its rendition, attaches only
to such property as is capable of seizure and sale under
execution based upon the judgment.

2. As we have heretofore seen, choses in action are not
subject to seizure and sale under executions based upon
ordinary judgments. In order to reach the property of the
debtor in such choses in action, some other additional pro-
ceeding is necessary to fix the lien of such judgments. The
fund must be reached either by process of garnishment, or by
some collateral proceeding instituted for the purpose of im-
pounding it so that it can be applied in satisfaction of the
judgment. Until it has been so seized by the courts for the
purpose of appropriating it to the payment of the judgment,
it is still subject to the dominion and control of the debtor,
and he may make a bona fide assignment or transfer of the
fund in satisfaction of pre-existing debts, and the person
receiving it in pursuance of such transfer and assignment,
will take it freed from the general lien established by law in
favor of a judgment creditor against the property of the
assignor. In the present case there is no question made
upon the bona fides of the transaction between the Ex-
change Bank of Macon and Sparks, the debtor. It bought
this special fund from him, and paid him for it; and al-

though it may not have taken an absolute legal assignment of the fund, it took a perfect equity, which will be protected against the subsequent action of the judgment creditor. We conclude, therefore, that the court committed no error in sustaining the contention of the claimant, and awarding the fund as in the judgment of which the plaintiff in error complains.

*Judgment affirmed. All the Justices concurring.*