FOURTH NATIONAL BANK OF MACON *v.* SWIFT & CO.

1. As to shares of stock in a corporation which are choses in action, quasi-negotiable (by transfer of the stock certificate merely indorsed in blank), the lien of a judgment does not attach upon the rendition of the judgment, but only after notice to the corporation as prescribed

by law. Hence the rights and title of a pledgee for value, who takes corporate stock as collateral security, are superior to the lien of a judgment older than the pledge of such stock, which has not been levied upon, and where notice of the levy has not been given in accordance with the provisions of section 6035 of the Civil Code of 1910. To subject to levy and sale shares in a corporation which are held as collateral by a pledgee, notice to the corporation of the levy or judgment is an essential prerequisite. "Until this notice is received, the statute recognizes that the company may make transfers notwithstanding the existence of a judgment against the shareholder."

2. In the present case there was no levy and no notice; the fi. fa. against the owner of certain shares of bank stock was merely placed in the hands of the sheriff, and the judgment creditor asserted a right to a priority in the distribution of the fund arising from the sale of the bank stock, which was pledged to another, upon the ground that the judgment in his favor had been rendered prior to the alleged transfer of the stock to the pledgee as collateral security. In view of the ruling in the preceding headnote the Court of Appeals erred in holding that the rights of the pledgee who had no notice of the prior judgment were inferior to those of a judgment creditor.

No. 4511. APRIL 24, 1925.

Certiorari; from Court of Appeals. 32 *Ga. App.* 589.

*Walter DeFore* and *James C. Estes,* for plaintiff in error.

*Lawson & Ware,* contra.

RUSSELL, C. J. On February 13, 1922, the Fourth National Bank of Macon loaned to W. P. Cobb $750 and took from him the usual form of note employed by banks where the loan is secured by collateral, and took from Cobb certificate number 49 representing ten shares of stock of the Rhine Banking Company, located at Rhine, Georgia, and the certificate duly transferred was delivered by Cobb to the bank. The bank took the transfer and advanced the money without any knowledge of any lien or claim against the collateral, and upon the faith that it was obtaining the unencumbered title to the same for the purpose of securing the loan. Cobb did not pay the note, and it was duly sued to judgment in the city court of Eastman. Judgment was obtained on May 7, 1923, being a general judgment against the defendant and an indorser, and confirming the special lien upon the stock obtained by virtue of its contract of February 13, 1922.. Under this judgment the stock was sold by the sheriff of Dodge County. Swift and Company placed in the hands of the sheriff an execution which it had obtained against W. P. Cobb on February 9, 1922, and which had been entered upon the general execution docket; and

thereafter brought a rule against the sheriff, and the bank became a party, each claiming the fund. The company relies upon its execution of February 9, 1922, and its entry upon the general execution docket, and the bank claims the fund by reason of its contractual lien or title of February 13, 1922. The company insists that the lien of its judgment attached to the stock in question in the same manner that it would have attached to tangible personalty or realty; and the bank contends that it did not, but that the stock was a chose in action and was not impressed with the lien of the judgment by its entry upon the general execution docket. This is the only issue in the case. The judge of the city court of Eastman, to whom the case was submitted upon an agreed statement of facts, for determination without the intervention of a jury, sustained the contention of the company and held that the entry of the judgment on the general execution docket, without more, immediately gave to the company a lien upon the stock in question, and that the bank, which four days thereafter advanced money to the owner of the stock in good faith and without notice of claim or lien against the stock, took it with legal or constructive notice by virtue of the entry of the execution on the general execution docket. The bank carried this judgment to the Court of Appeals for review; and that court affirmed the judgment of the trial court, holding specifically and directly that stock in any corporation in this State is subject to the lien of an execution entered upon the general execution docket, unaffected by any transfer or pledge of such stock subsequent to the judgment. The case is now before this court upon certiorari, which we deemed proper to grant in view of the importance of the question involved.

There is but one proposition of law involved in this case,—which is the same question as that before the trial court and before the Court of Appeals on review. The query has been presented in various forms in the briefs. But the final decision of the case rests upon the question: does the entry of an execution on the general execution docket, without more, give to the holder of the execution a lien upon corporate stock belonging to the defendant in fi. fa. ? In other words, does the mere fact that the legislature of this State has provided a means by which stock owned by a defendant may be subjected to levy and sale in a specific manner

affect or destroy the modern commercial quality and attributes of corporate stock as a chose in action, and make it tangible personalty and subject to the rules applicable to such property? Counsel for the defendant in error, Swift & Company, does not concede the accuracy of the question as just stated. He argues "To concede this to be the true question would be to admit, first, that corporate stock is a true chose in action, and, second, that the Fourth National Bank of Macon was an innocent pledgee of the stock. Our contention is that corporate stock is not and never has been a true chose in action." He further contends that corporate stock becomes subject to the lien of the judgment, because of its inherent nature of personalty,—a chose and not a chose in action; and further, that "an accurate statement of this question seems to us to be whether the lien of a duly recorded judgment attaches to corporate stock so as to prevent its transfer free of the lien of the judgment to a person other than the corporation issuing the stock. This is, in our opinion, an original question. A review of the authorities shows that the law in reference to this matter has not been determined." We agree that the question now presented is somewhat novel, but we are of the opinion that this court has already decided, adversely to the contention of the defendant in error, that certificates of corporate stock pledged as security are not mere choses but choses in action. It is held in the decision of our brethren of the Court of Appeals, that, "While stock in a corporation is a chose in action, and therefore, in the absence of a statute, would not be subject to levy and sale under execution, it is specially made subject thereto by the act of 1822 (Cobb's Dig. 511, 512), and Civil Code (1910), §§ 6035, 6036." The rulings of this court in *Owens* v. *Atlanta Trust and Banking Co.*, 122 *Ga.* 521 (2) (50 S. E. 379), and *Buena Vista Loan & Savings Bank* v. *Grier*, 114 *Ga.* 398 (3) (40 S. E. 284), are cited by the Court of Appeals in support of the foregoing ruling. But regardless of the correctness of the ruling of the Court of Appeals,—whether corporate stock is a chose or a chose in action,—that proposition is not brought in question by the plaintiff in error, who concedes the correctness of the first headnote of the decision of the Court of Appeals, as he must, because it is based upon the prior rulings of this court. In the case of *Owens* v. *Atlanta Trust & Banking Co.*, supra, Mr. Justice Lamar, delivering the unanimous opinion

of the court, said: "Stock in a corporation is a chose in action. In the absence of a statute it would not be subject to levy or sale. By the act of 1822 (Cobb's Dig. 511, 512) the lien of the judgment against the shareholder attached from the date of its rendition, but had to be kept alive by giving notice within twenty days to the corporation. This policy is reversed by the Civil Code, § 5431 [Code of 1910, § 6036]. The lien now does not attach upon the rendition of the judgment, but only after notice acting as a sort of garnishment on the corporation, or withholding the lien until levy as under the Civil Code, § 3125 [Code of 1910, § 3701]. Until this notice is received, the statute recognizes that the company may make transfers notwithstanding the existence of a judgment against the shareholder. The quasi-negotiable character of stock, the fact that certificates indorsed in blank may and do pass from hand to hand, and the necessity of preserving the rights of that large body of the public who buy and lend on the faith of shares, was no doubt the reason for the change made by the code in the act of 1822. §§ 5430, 5431 [now §§ 6035, 6036]."

As we see it, the first headnote of the opinion of the Court of Appeals does not militate in any way against the contentions of the bank throughout this litigation. The second headnote of the opinion holds that the entry of a judgment on the general execution docket gives the judgment-holder a lien on the corporate stock; and apparently this conclusion was reached by reason of the fact that the sale of corporate stock under execution is authorized by law. In support of this position the Court of Appeals cites *Fidelity & Deposit Co.* v. *Exchange Bank,* 100 *Ga.* 619 (28 S. E. 393), and *Bank of LaFayette* v. *Wardlaw,* 20 *Ga. App.* 741 (1, 2) (93 S. E. 236). In the *Fidelity & Deposit Co.* case, a receiver appointed by the court gave a draft to a creditor upon commissioners in the custody of a fund from which the receiver was entitled to compensation, and thereafter another creditor garnished the commissioners upon a judgment which had been obtained prior to the execution of the draft in question. The issue was as to the priority of the claim of the garnishing creditor over that of the creditor holding the draft; and the court held that the holder of the draft would prevail, and that the lien of the judgment did not attach to this fund as a chose in action. A preliminary question in that case was raised by the garnishees, claiming exemption from the process

of garnishment by virtue of their office as commissioners of the court; but this court pretermitted the consideration of this preliminary question, and placed its decision on the question as to priority. We deem the ruling of this court in the *Fidelity Co.* case, supra, as authority directly supporting the contention of the plaintiff in error in this case. The second headnote in that case is in these words: "Choses in action are not subject to seizure and sale under executions based upon ordinary judgments, and can only be reached by the judgment creditor through a garnishment, or some other collateral proceeding; and inasmuch as such garnishment or collateral proceeding is necessary to fix the lien of the judgment so as to make it effective, an assignment of the chose in action by the debtor before the institution of such collateral proceeding passes to the assignee the property of the debtor in the chose in action assigned, freed from the lien of a general judgment previously rendered against the assignor." In delivering the opinion of the court, Mr. Justice Atkinson, after stating the contentions of the learned counsel for the plaintiff in error, and quoting sections 3580 and 5452 of the Code of 1895, held as follows: "According to our conception of the meaning of these sections of the code, they bind in a general sense only such property of the debtor as is capable of actual seizure, sequestration, and delivery in satisfaction of the creditor's demand." And again, "As we have heretofore seen, choses in action are not subject to seizure and sale under executions based upon ordinary judgments. In order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments."

The sum and substance of the holding in the *Fidelity Co.* case is that a chose in action can not be reached by direct levy. In order to subject it to the lien of a judgment there must be some preliminary or collateral proceeding to subject the chose in action, or such must have been had before it can properly be considered by the court in an adjudication upon a rule to distribute. The lien of the judgment, to use the language of Mr. Justice Atkinson, does not attach ex proprio vigore. By the provisions of our law with reference to giving notice to the corporation issuing the stock sought to be subjected, the legislature prescribed an essential prerequisite necessary to be complied with before the corporate stock

—a chose in action, as-held by this court—can be subjected to levy or sale, just as it was pointed out in the *Fidelity Co.* case, that, even if garnishment was the remedy to reach the fund in the hands of the commissioners, the garnishment should have anteceded the draft drawn upon the commissioners, or otherwise the right of the. defendant in fi. fa. to dispose of his property would not be affected by the prior judgment against him, because the lien of that judgment could not attach until the chose in action was in proper legal position to be affected thereby. So we hold in this case that shares of corporate stock, which are choses in action, can not be subjected to levy and sale except by compliance with the legal formula prescribed in sections 6035 and 6036 of the Code (1910). "A levy on stock of the corporation without the statutory notice is insufficient, and may be arrested on illegality." *Weaver* v. *Tuten,* 144 *Ga.* 9 (85 S. E. 1048). It is only because of specific legislation that choses in action are subject to levy and sale at all, and in this instance, as in all other cases, statutes in derogation of the common law must be strictly construed and precisely followed. We think, therefore, that the Court of Appeals erred in affirming the judgment of the lower court.

*Judgment reversed. All the Justices concur.*