In re DOTMD, LLC, Debtor.

Morton P. Levine, as Chapter 11 Trustee for the Estate of DotMD, LLC, Plaintiff,

v.

Frank Weyer, as Assignee of Judgments of East Coast Internet, Inc. and Internet.MD, Inc., East Coast Internet, Inc., and Internet, MD, Inc. Defendants.

Bankruptcy No. 01–67106.
Adversary No. 03–9086.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Nov. 5, 2003.

Morton P. Levine, Esq., Stephen H. Block, Esq., Levine & Block, Atlanta, GA, for Plaintiff/Petitioner/Movant.

Frank M. Weyer, Beverly Hills, CA, for Defendant/Respondent.

### ORDER

JOYCE BIHARY, Bankruptcy Judge.

This case raises interesting questions about a trustee's power to avoid a judicial lien in Georgia under the Bankruptcy Code's strong-arm clause. Procedurally, this adversary proceeding is before the Court on plaintiff's motion for summary judgment. The Trustee filed a complaint to set aside a judgment lien recorded by defendant Frank Weyer two weeks before the debtor filed bankruptcy. The complaint is based on three of the Trustee's avoiding powers: (1) the strong-arm clause in § 544(a)(1) of the Bankruptcy Code; (2) the preference statute in 11 U.S.C. § 547; and (3) the fraudulent conveyance statute in 11 U.S.C. § 548. The summary judgment motion is not based on the preference or fraudulent conveyance claim, but is based solely on the Trustee's § 544(a)(1) claim. Simply put, the Trustee contends that the judgment lien recorded by the defendant is not effective to create a secured claim as to monies held by the Trustee, both because defendant did not record his judgment lien under the name of the debtor and because a judgment lien in Georgia does not attach to a chose in action. After carefully reviewing the record, the parties' briefs, and the applicable law, the Court concludes that a trustee in bankruptcy does not have the power under § 544(a)(1) to set aside a lien created by the entry of a judgment in Georgia, and that a judgment creditor's failure to record a judgment in the General Execution Docket does not affect his lien rights vis-a-vis a trustee. Nonetheless, the undisputed facts show that defendant's judgment did not attach to the monies at issue held by the Trustee, and defendant only has an unsecured claim in this case.

The material facts relevant to the motion are undisputed. The debtor here is DotMD, LLC. Defendant Frank Weyer is the assignee for the purposes of collection of all right, title and interest of Internet, MD, Inc. and East Coast Internet, Inc. against Domain Name Trust, Inc. ("DNT") which merged into DotMD, LLC. On September 17, 1999, Internet MD, Inc. and East Coast Internet, Inc. filed a civil action against DNT in the United States District Court, Central District of California (the "California Case"). On February 16, 2000, DNT merged into DotMD, LLC. The caption in the California Case was

never changed to reflect that DNT had merged into DotMD, LLC.

On March 29, 2001, the Court entered an order and judgment in the California Case against DNT in the amount of $2,200,000.00. The text of the order and judgment states that DNT had merged with DotMD, LLC, but the caption of the case remained with DNT listed as the defendant. On May 11, 2001, the United States District Court in the Northern District of Georgia issued a writ of execution against DNT. Mr. Weyer recorded the writ of execution in the General Execution Docket, Superior Court of Fulton County, Georgia, on May 14, 2001.

The debtor DotMD, LLC filed this bankruptcy case some two weeks later on June 1, 2001. Its major asset was listed as an agreement dated May 20, 1998 between DNT and Republican Centre for Informatics ("RCI") which involved the right to sell internet domain name licenses or subscriptions to use the name ".md." RCI was an organization associated with the country of Moldova which had been assigned ".md" as an Internet domain name.[1] RCI later became known as MoldData. Morton Levine was appointed as a Chapter 11 Trustee in this case in July of 2001.

On February 11, 2003, the Court approved the Trustee's motion to compromise and settle the disputes with MoldData regarding this agreement. The settlement involved, among other things, the payment by MoldData of $175,000.00 to the Trustee and the termination of the agreement. The Trustee is now holding the $175,000.00 plus interest, and defendant Weyer claims a right to these monies as a result of the judgment which he recorded two weeks before the debtor filed bankruptcy.

The Trustee argues that Mr. Weyer's judgment lien is avoidable under 11 U.S.C § 544(a)(1), because the judgment was recorded in the General Execution Docket against DNT, not DotMD, LLC. Plaintiff asserts in his motion for summary judgment that the judgment was not indexed or filed by the Clerk of the Superior Court of Fulton County under the name DotMD, LLC, and that a search of the Fulton County, Georgia General Execution Docket indices for judgment liens against DotMD, LLC when the bankruptcy case was filed would not have disclosed any judgment lien in favor of Mr. Weyer and against "DotMD, LLC." Mr. Weyer disputes these contentions and argues that they are irrelevant and immaterial.

Section 544(a) of the Bankruptcy Code is often referred to as the "strong-arm clause," and Section 544(a)(1) gives the trustee the power and status of a hypothetical judicial lien creditor. The statute provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple

---

1. The debtor was involved in the marketing and registration of users of ".md" which is a Top Level Domain ("TLD") on the Internet. The term ".md" is the TLD for the Republic of Moldova, and Moldova's TLD manager was RCI, the party to the Agreement with the debtor. The debtor believed that the ".md" was commercially viable in the United States and other English-speaking countries, because the abbreviation "MD" is commonly associated with the medical profession.

contract could have obtained such a judicial lien, whether or not such a creditor exists;

11 U.S.C. § 544(a)(1) (2003). The trustee stands in the shoes of a creditor who hypothetically extends credit to the debtor at the time of the filing of the bankruptcy petition and who, as of the same moment, hypothetically obtains a judicial lien on all property in which the debtor has any interest. GEORGE M. TRIESTER, ET AL, FUNDAMENTALS OF BANKRUPTCY LAW § 4.03(a) (4th ed.1996). The advantages of this power are found in state law.

The Trustee argues that Mr. Weyer made a mistake by recording the judgment against DNT instead of DotMD, LLC. Mr. Weyer contends that he properly recorded his judgment lien on the General Execution Docket and that two provisions of the Georgia Limited Liability Company Act ("LLC Act"), O.C.G.A. §§ 14–11–905(a)(5) and (a)(6), support his position. Section 14–11–905 of the Georgia Code is captioned "Effect of Merger" and subsections (5) and (6) provide as follows:

> (a) If the surviving entity is a limited liability company, when a merger takes effect:
>
> . . .
>
> (5) A proceeding pending against any constituent business entity may be continued as if the merger did not occur or the surviving limited liability

company may be substituted in the proceeding for the constituent business entity whose existence ceased;

> (6) Neither the rights of creditors nor any liens on the property of any constituent business entity shall be impaired by the merger;

O.C.G.A. §§ 14–11–905(a)(5) and (a)(6) (2003). Mr. Weyer argues that since the LLC Act provides that a plaintiff can continue a lawsuit against the constituent entity[2] in the constituent entity's name, it follows that a plaintiff can record a post-merger judgment against the constituent entity instead of the surviving entity on the General Execution Docket, and that such a recording is sufficient to perfect a lien on all assets of the surviving entity. Mr. Weyer is correct that the LLC Act permitted him to continue his litigation against DNT in the California case with DNT as the named defendant. However, the Court has serious doubts about whether the language and the policies behind both the Georgia recording statute and the LLC Act go so far as to permit a judgment creditor to prevail against innocent third party purchasers when the judgment creditor records a post-merger judgment against the old constituent entity rather than the new surviving entity, particularly when the judgment is recorded one year after the merger and when the judgment creditor has full knowledge of the merger and of the name of the surviving entity.[3]

---

**2.** The Georgia Limited Liability Company Act refers to a constituent entity as the company that merged into, or became part of, the surviving company.

**3.** The LLC Act does not state that it is sufficient for a judgment creditor to record a judgment lien or to file a UCC financing statement in the name of the constituent business entity rather than the surviving entity. It stands to reason that a party who obtains a judgment after a merger and who knows about the merger ought to record the judgment in the name of the surviving entity in

order to prevail against any third party purchaser of property who buys the property in good faith and without notice. Furthermore, both subsections (5) and (6) of section 14–11–905(a) address the rights and obligations between the creditor or the party to a lawsuit on the one hand and the debtor or the business entity that is being sued on the other hand. Neither subsection deals with the rights of the third parties, and neither subsection suggests that it is intended to pre-empt any state recording statute. Moreover, it is fairly simple to record a judgment in the name of a surviv-

Fortunately for Mr. Weyer, the Trustee is not standing in the shoes of a third party purchaser and whether Mr. Weyer recorded the judgment is immaterial in this action brought by the Trustee.

 The Georgia statute that provides for the recording of executions is found in O.C.G.A. § 9–12–81 and states as follows:

**9–12–81. General execution docket; when money judgment in county of defendant's residence creates lien against third parties without notice.**

(a) The clerk of the superior court of each county shall be required to keep a general execution docket.

(b) As against the interest of third parties acting in good faith and without notice who have acquired a transfer or lien binding the property of the defendant in judgment, no money judgment obtained within the county of the defendant's residence in any court of this state or federal court in this state shall create a lien upon the property of the defendant unless the execution issuing thereon is entered upon the execution docket. When the execution has been entered upon the docket, the lien shall date from such entry.

O.C.G.A. § 9–12–81 (2003). The purpose of the statute is to protect third parties acting in good faith and without notice who may have acquired a contractual lien or transfer binding on the judgment debtor's property. *Corley–Powell Produce Co. v. Allen et al,* 42 Ga.App. 641, 157 S.E. 251, 252 (1931); *accord National Bank of Georgia v. Morris–Weathers Co.,* 248 Ga. 798, 800, 286 S.E.2d 17, 18 (1982). One who claims the benefit of this statute must prove that he belongs to such protected class; i.e., that he is a third party acting in good faith and without notice who has acquired the property or acquired a lien on the property at issue. *Eason v. Vandiver,* 108 Ga. 109, 33 S.E. 873 (1899).

 The Trustee has not shown that he is in this protected class, and his status under § 544(a)(1) of the Bankruptcy Code as a hypothetical judgment lien creditor does not give him any rights under O.C.G.A. § 9–12–81. The contest between Mr. Weyer and the Trustee insofar as the strong-arm clause is concerned is like a contest between two judgment creditors. The Supreme Court of Georgia decided three cases in the 1890's construing the applicability of a recording statute similar to O.C.G.A. § 9–12–81 to contests involving judgment creditors.[4] In 1894, in *Bai-*

ing business entity. A judgment creditor can have a new *fifa* issued if necessary or can simply present the merger documents at the place of recording on the General Execution Docket.

Finally, a logical extension of Mr. Weyer's argument is that any plaintiff in a lawsuit could have full knowledge of the fact that the defendant has merged into another entity, the parties could enter into a settlement agreement with the merged entity but keep it under the name of the constituent entity, the plaintiff could then record a judgment against the name of the constituent entity only, and third parties dealing with the surviving entity in good faith years later would have no protection, even though they would have no way of

checking the General Execution Docket and determining that the judgment existed. This would not seem to be a fair reading or a fair application of the law.

4. The Georgia statute on recording judgments has remained substantively unchanged since its original enactment in 1889 as part of the Registry Act of 1889. *Compare* 1889 Ga. Laws 106 § 2 at 107 (formerly found at Civil Code 1895 § 2779) *with* O.C.G.A § 9–12–81 (2003). In 1921, the section was amended to add the words "Municipal Court or other Courts" to the list of courts from which a judgment must be recorded to create a lien as against third party transferees acting in good faith and without notice. *See* 1921 Ga. Laws

*ley v. Bailey,* 93 Ga. 768, 21 S.E. 77 (1894), Justice Samuel Lumpkin recognized, but did not answer, the important question of whether the word "lien" used in the phrase "transfer or lien binding the same property" which appeared in The Registry Act of 1889 should be understood as applying only to liens acquired by contract or should be construed to include liens by judgment. In 1896, Justice Lumpkin decided the issue in *Griffith v. Posey,* 98 Ga. 475, 25 S.E. 515 (1896), holding that the recording statute had no application to contests between ordinary common law judgments, that the word "lien" as used in the phrase "who may have acquired a transfer or lien binding the same property" applied only to liens acquired by contract, and not to those obtained by judgment. The Court further held that: (1) the recording statute had no application to contests between ordinary common law judgments, and (2) the older of two judgments against the same defendant had priority over the younger judgment, even though the older judgment had never been entered on the General Execution Docket. *Id.* One year earlier, in *Donovan et al. v. Simmons et al.,* 96 Ga. 340, 22 S.E. 966 (1895), the Supreme Court of Georgia had decided a contest between an unrecorded deed of sale and a recorded judgment and held that it was evident that the word "lien" as used in the recording statute had reference exclusively to liens acquired by contract. The Court noted that "lien" was a generic term including both liens acquired by contract and liens acquired by operation of law, but that the context of the recording statute indicated that it was used there in the restricted sense, as applicable only to contractual liens. *Id.* These cases from the late nineteenth century are good law, and counsel have not identified any case law or changes to the recording statute that would affect this construction. What this means here is that a failure by Mr. Weyer to record his judgment lien would only affect his rights vis-a-vis a contractual lien and not against a later judgment creditor.

██ Once again, the trustee in bankruptcy under 11 U.S.C. § 544(a)(1) is only standing in the shoes of a hypothetical judgment lien creditor, and not in the shoes of a contractual lien holder or a third party purchaser who acquired personal property without notice and in good faith. Thus, the Trustee cannot use § 544(a)(1) and O.C.G.A. § 9–12–81 to avoid lien rights flowing from Mr. Weyer's judgment, and Mr. Weyer did not need to record the judgment on the General Execution Docket in order to protect himself against the bankruptcy trustee's strong-arm powers. Cases involving the strong-arm clause and unrecorded interests in real estate are distinguishable, because 11 U.S.C. § 544(a)(3) gives the trustee the standing of a bona fide purchaser of real estate. But nowhere in § 544(a) does the trustee have the standing of a bona fide purchaser of personalty, and the trustee's strong-arm power as a judgment lien creditor is not strong enough to defeat the interests of the holder of an unrecorded judgment in personalty in Georgia.

It should be noted that the parties did not address the limits of § 544(a)(1) here

115 § 1 at 115–16. In 1955, the section was amended to remove the language allowing judgments entered on the general execution docket within ten (10) days of rendition to operate as a lien from the date the judgment was rendered even as to third party transferees acting in good faith and without notice.

*See* 1955 Ga. Laws 425 § 1 at 425–26. The current version of this section is not materially different from the 1955 version. *Compare* 1955 Ga. Laws 425 § 1 at 425–26 (formerly found at Code 1933 § 39–701) *with* O.C.G.A. § 9–12–81 (2003).

or the law under O.C.G.A. § 9–12–81 in their briefs, but argued only over whether Mr. Weyer's recording in the General Execution Docket under the name of DNT was fatal. This is probably because it is often assumed that the strong-arm clause can be used to avoid any improperly perfected security interest and any improperly recorded interest. In fact, section 9–317 of the Uniform Commercial Code (O.C.G.A. § 11–9–317) specifically states that an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected,[5] and U.C.C. section 9–102(53)(C) defines a "lien creditor" to include a trustee in bankruptcy.[6] Thus, one often sees a bankruptcy trustee prevailing over a creditor with an improperly recorded financing statement, and many cases arising under the Uniform Commercial Code involve whether the financing statement was properly recorded and whether the correct name of the debtor appears on the financing statement. However, the Georgia law regarding the perfection of consensual security interests and the Georgia law regarding the perfection of judgment liens are not identical. An unrecorded judgment in Georgia is not subordinate to a later judgment, and so a trustee in bankruptcy cannot use § 544(a)(1) to avoid a judgment lien, to the extent one exists, simply because the judgment is not recorded in the General Execution Docket.

This brings us to the question of whether Mr. Weyer has a lien on the funds held by the Trustee resulting from the settlement with MoldData. In general, a judgment creditor in Georgia acquires a lien on personal property on the day the creditor obtains the judgment. O.C.G.A. § 9–12–80 (2003); *Cohutta Mills, Inc. v. Hawthorne Industries, Inc.,* 179 Ga.App. 815, 348 S.E.2d 91, 93 (1986); *see also In re Tinsley,* 421 F.Supp. 1007, 1010 (M.D.Ga.1976), *aff'd,* 554 F.2d 1064 (5th Cir.1977). In a contest between two judgment creditors, the earlier judgment prevails unless the judgments are rendered during the same term of court in which the case the judgments are deemed to be of equal dignity. O.C.G.A. § 9–12–87 (2003); *Wellington v. Lenkerd Co., Inc.,* 157 Ga. App. 755, 278 S.E.2d 458 (1981); *Fas–Pac, Inc. v. Fillingame,* 123 Ga.App. 203, 180 S.E.2d 243 (1971); *Eads et al v. Southern Surety Co. et al,* 178 Ga. 348, 173 S.E. 163, 164 (1934).

In this case, however, the Trustee argues that any judgment lien of Mr. Weyer could not attach to the proceeds from the Trustee's settlement with RCI, because judgment liens in Georgia do not attach to a chose in action. Mr. Weyer agrees that judgment liens in Georgia do not attach to a chose in action, but he disagrees as to whether the debtor's rights and obligations under the agreement with

---

5. **11–9–317. Interests that take priority over or take free of security interest or agricultural lien.**
 (a) *Conflicting security interests and rights of lien creditors.* A security interest or agricultural lien is subordinate to the rights of:
 . . .
 (2) . . . a person that becomes a lien creditor before the earlier of the time:
 (A) The security interest or agricultural lien is perfected; or
 (B) A financing statement covering the collateral is filed.

O.C.G.A. § 11–9–317 (2003).

6. **11–9–102. Definitions and index of definitions.**
 (a) *Article 9 definitions.* As used in this article, the term:
 . . .
 (53) "Lien creditor" means:
 . . .
 (C) A trustee in bankruptcy from the date of the filing of the petition; . . . .
O.C.G.A. § 11–9–102(53) (2003).

RCI fall within the definition of a chose in action.

Choses in action are covered in Article 2 of Chapter 12 of Title 44 of the Georgia Code. Title 44 deals with property, and Chapter 12 deals with rights in personalty. Sections 44–12–20 and 44–12–21 define a "chose in action" and the rights and remedies to enforce a chose in action, respectively. These statutes provide as follows:

**44–12–20. "Chose in action" defined.**

A chose in action is personalty to which the owner has a right of possession in the future or a right of immediate possession which is being wrongfully withheld.

O.C.G.A. § 44–12–20 (2003).

**44–12–21. Rights and remedies to enforce choses in action.**

For every violation of an express or implied contract and for every injury done by another to one's person or property, the law gives a right to recover and a remedy to enforce it. The right is a chose in action, and the remedy is an action at law.

O.C.G.A. § 44–12–21 (2003).

"Chose" is French for "thing," and a chose in action can be distinguished from a "chose in possession." The sheriff can seize a thing possessed by a judgment debtor, but a sheriff cannot generally go seize a thing possessed by a third party without a judicial proceeding in which the third party is joined and ordered to turn-over the property. Thus, it makes sense that a judicial lien would not attach to a chose in action at the time the judgment is rendered. The logic of the legal principle is probably best stated in the 1897 case of

*Fidelity & Deposit Co. of Maryland v. Exchange Bank of Macon*, 100 Ga. 619, 28 S.E. 393 (1897) in which the Supreme Court of Georgia held that:

choses in action are not subject to seizure and sale under executions based on ordinary judgments. In order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments. The fund must be reached either by process of garnishment, or by some collateral proceeding instituted for the purpose of impounding it, so that it can be applied in satisfaction of the judgment.

*Fidelity & Deposit Co.*, 28 S.E. at 395; *see also* O.C.G.A. § 9–13–57 (2003) ("Choses in action are not liable to be seized and sold under execution, unless made specifically so by statute.").[7]

The case law provides examples of what constitutes a "chose in action" and explains the logic behind the principle that a judgment lien cannot attach to a chose in action. In a case certified to the Supreme Court of Georgia by the Eleventh Circuit Court of Appeals, the Court held that a partnership interest was a chose in action. *Prodigy Centers/Atlanta et al v. T–C Associates et al*, 269 Ga. 522, 501 S.E.2d 209 (1998). Citing O.C.G.A. § 44–12–20, the Court stated that a chose in action includes the proceeds from a contract performance and is also the right to be paid on a debt. The personalty at issue in that case was the accumulation of monies, and the Court held that since a judgment creditor had to initiate a collateral proceeding to have a court order the monies paid by the third party to the judgment creditor, the inter-

---

7. Requiring a collateral court proceeding before a judgment lien can attach to a chose in action is sound policy, because it guarantees that the third party, who holds the property and who may also have rights in the subject property, will receive notice and the opportunity to be heard, and that the property is fairly distributed. See *Appeal of Swartz*, 18 F.3d 413, 417 (7th Cir.1994).

est was a chose in action. *Prodigy Centers/Atlanta,* 269 Ga. at 525–26, 501 S.E.2d at 212–13; *see also Ivey v. Gatlin,* 194 Ga. 27, 20 S.E.2d 592, (1942); *Fourth Nat. Bank of Macon v. Swift & Co.,* 160 Ga. 372, 127 S.E. 729 (1925).

In the case at bar, the property at issue was derived from the debtor's claims related to the contractual dispute with RCI. A sheriff could not have levied on the contract without first obtaining an order from a court of competent jurisdiction. Thus, the debtor's rights under the contract with RCI fits within the definition of a chose in action found in O.C.G.A. § 44–12–20. In addition, because any recovery was contingent on an action related to its contract dispute, the claims settled by the Trustee with MoldData fit within O.C.G.A. § 44–12–21. To hold otherwise would be tantamount to saying that Mr. Weyer could have taken his judgment against the debtor and had a sheriff seize funds allegedly due the debtor from RCI. The sheriff could not have done so, and the personalty here was not leviable. Accordingly, any judgment lien of Mr. Weyer's did not attach to the estate's claims against RCI or MoldData, and Mr. Weyer does not now have a lien on the settlement proceeds held by the Trustee.

In accordance with the above reasoning, the Trustee's motion for summary judgment is GRANTED, insofar as defendant Weyer's claim is not secured by the proceeds from the settlement with MoldData.