CARMICHAEL TILE CO. *v.* YAARAB TEMPLE BUILDING CO. *et al.*

*George B. Rush,* for plaintiff.

*Colquitt, Parker, Troutman & Arkwright, William A. Fuller,* and *Spalding, MacDougald & Sibley,* for defendants.

GILBERT, J. Carmichael Tile Company on February 19, 1931, sued Bayley & Company, and on the same day caused summons of garnishment to be served on Yaarab Temple Building Company. This suit against Bayley, as stated above, was not connected in any way with the building of Yaarab Temple. Shortly after the garnishment was served on Yaarab Temple Building Company, the security deeds to Trust Company of Georgia and Carlton W. Binns, as trustees, were executed and the subscription notes transferred. No question of bona fides is raised. When the Trust Company of Georgia, as trustee, sought to foreclose its security deed, Carmichael Tile Company intervened, claiming a prior lien on the subscriptions and cash proceeds arising therefrom, on the ground that its service of garnishment on Yaarab Temple Building Company created a lien in favor of the Tile Company on said subscriptions and cash. That contention presents the controlling question. The Trust Company of Georgia is a mere nominal party, with no real interest in this controversy. After the service of the garnishment upon the Building Company the Tile Company obtained a judgment against Bayley & Company and a final judgment on the garnishment against the Building Company. The Tile Company had a lien, by reason of the garnishment and judgment thereon, against any property of the Building Company to which the lien could attach. It is not claimed that the lien attached to any property other than subscriptions and the cash proceeds of the same. It is beyond dispute that under the facts of this case a transfer of the subscrip-

tions by the Building Company, as stated above, in no wise relieved the Building Company from the force and effect of the garnishment judgment rendered against it in favor of the Tile Company. The Tile Company is a judgment creditor of the Building Company. No citation is necessary on that question. The real issue is whether or not a lien attached to the subscriptions and followed them into the hands of the grantees in the security deeds and attached to the cash when any of the subscriptions were paid.

The Code provides that "The service of a summons of garnishment shall in all cases *operate as a lien* on all the garnishee's indebtedness at the date of the service and also on all future indebtedness accruing up to the date of the answer, and such lien shall not be defeated by any payments by the garnishee." Civil Code (1910), § 5273. The question is what is meant by the words "operate as a lien," as used in that section. The meaning of the word "lien" used with reference to garnishment has been discussed by textwriters, by this court, and by numerous other courts. In no instance has a definite and satisfactory conclusion been reached as to the exact meaning of the word as there employed, so far as our investigation reveals. In *Anderson* v. *Ashford,* 174 *Ga.* 660 (163 S. E. 741), this court referred to the question. The precise question now before us was not there involved. The chief question there was when did the lien attach. In that case we said, with reference to the service of garnishment: "The office of a garnishment proceeding is to make sure that property or effects in the hands of a third party are held subject to the order of the court until conflicting claims are adjudicated. It has frequently been held that 'a judgment creates no lien on choses in action belonging to the defendant.' *Armour Packing Co.* v. *Wynn,* 119 *Ga.* 683 (46 S. E. 865), and cit.; *Fourth National Bank* v. *Swift,* 160 *Ga.* 372, 376 (127 S. E. 729) ; Civil Code (1910), § 5948." At the date of service the Building Company owed Bayley & Co. $6778. The garnishment judgment operated "as a lien on" the Building Company's "indebtedness" to Bayley & Company. It did not attach to specific choses held by the Building Company. The service of garnishment from its date until judgment was rendered against the garnishee operated as an inchoate lien. Such inchoate lien became a complete lien upon, and in virtue of, the rendition of the judgment against the garnishee. After that time the legal rights of

the creditor were fixed by the judgment, dating from the service of the garnishment. *Anderson* v. *Ashford,* supra. This judgment against the garnishee in a statutory proceeding is a general judgment, and, like other general judgments, creates a lien on all such property of the garnishee "as is capable of actual seizure, sequestration and delivery, in satisfaction of the creditor's demand." That judgment was a mandate from the court to the garnishee to withhold payment to Bayley & Company, and to preserve the status quo of such indebtedness subject to order of the court. If the amount of indebtedness or any part of it is paid into court, or is in custodia legis, it may, on final judgment, be ordered paid to the garnishing creditor, or other creditors according to priorities.

This court dealt with some of the principles involved, in *Fidelity & Deposit Co.* v. *Exchange Bank,* 100 *Ga.* 619 (28 S. E. 393). In that case the debtor had drawn an order directing a sum due him to be paid to Exchange Bank, and the order had been delivered to the bank, but the money had not been so paid before garnishment was served. The judgment against the debtor had been rendered before the order of assignment was drawn. The court said: "It is, therefore, that when courts have seized and hold for distribution among creditors the property of the debtor, whether it consist of real property, personal property in the stricter sense, or mere money and choses in action, the liens of judgments generally will be respected; and in the distribution of a fund arising therefrom, the courts will recognize the liens of judgments, and appropriate the fund in hand according to the priority of such liens. It has been held in this State, that where moneys have been reduced to the possession of the court by the collection of choses in action, the liens of pre-existing judgments attach thereto, and, upon distribution, are entitled to preference according to their dignity and priority, but the liens of such judgments can not be held to so attach to money or choses in action as that, proprio vigore, they will prevent the alienation by the debtor of that class of property before the suing out of a summons of garnishment, or some other collateral proceeding necessary to fix absolutely the lien of such judgment so as to remove it from the personal dominion and control of the debtor. To hold that the lien of a general judgment would so attach, and to place such a construction upon the sections of the code above quoted, would lead to the most absurd consequences, and as well to the virtual repeal of

section 5353 of the Civil Code [1910, § 5948], which provides as follows: 'A judgment has no lien upon promissory notes in the hands of the defendant, nor are choses in action liable to be seized and sold under execution, unless made so specially by statute.' If in this special sense a judgment lien attach to all the property of the debtor, it would attach as well to money in his pocket, because money, like choses in action, is property of the debtor in a general sense, and no man in the most ordinary commercial transactions in life would be safe in receiving from a debtor, against whom there was an existing judgment, money in satisfaction of any demand which he might hold against the debtor; for, if the money were impressed with the lien, whoever received it would receive it subject to the lien, and the judgment creditor would have the right to follow it up and assert his lien in the hand of whomsoever it might be capable of being identified. It is manifest that no such intention ever entered the legislative mind; and therefore we reach the conclusion, that the lien of a judgment in the special sense which prevents the transfer of property of the debtor after its rendition attaches only to such property as is capable of seizure and sale under execution based upon the judgment. . . In order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments. The fund must be reached either by process of garnishment or by some collateral proceeding instituted for the purpose of impounding it so that it can be applied in satisfaction of the judgment. Until it has been so seized by the courts for purpose of appropriating it to the payment of the judgment, it is still subject to the dominion and control of the debtor, and he may make a bona fide assignment or transfer of the fund in satisfaction of pre-existing debts, and the person receiving it in pursuance of such transfer and assignment will take it freed from the general lien established by law in favor of a judgment creditor against the property of the assignor."

The phrase used in the above-quoted opinion, "the fund must be reached either by process of garnishment or by some collateral proceeding," etc., does not mean that the mere service of a statutory garnishment, or a judgment thereon, is sufficient to establish the lien. It does mean that the fund must be reached by process of garnishment to the extent that the fund is placed in the possession of the court or has been seized by the court and thus is within its

power of disposition. Compare *Spence* v. *Solomons Co.*, 129 *Ga.* 31 (58 S. E. 463). This is of course not a collateral proceeding to impound the subscriptions. We are bound to treat what is called "subscriptions" as choses in action, because the nature of such "subscriptions" is nowhere shown. It does not appear how they were made payable, nor to whom nor by whom, nor whether negotiable or non-negotiable. The burden was on the intervenor to show these facts. Accordingly the subscriptions will be treated as negotiable, and that they were transferred before maturity. "A bona fide purchaser, for value, of a negotiable promissory note before due, has a right to collect the amount thereof, notwithstanding the maker had been served with a summons of garnishment, requiring him to answer what he was indebted to the payee, who was the owner of it at the time of the service of the summons. In such a case the rights of the purchaser are paramount to those of the garnishing creditor." *Mims* v. *West,* 38 *Ga.* 18 (95 Am. D. 379). See *Burton* v. *Wynne,* 55 *Ga.* 615. Yaarab Temple Building Company, according to this record, paid out and transferred to creditors, or to trustees for the benefit of its creditors, all of its assets, and became insolvent before the filing of the intervention by the Tile Company. The sole object of its corporate creation, it is inferable, was to accomplish the erection of the Yaarab Mosque. Its payments and assignments of assets, so far as the record discloses, were made bona fide in pursuance of the objects of the incorporation, in payment for labor and material employed and expended in the erection of the mosque. Having assigned to trustees for the benefit of creditors the subscriptions which it held, and being insolvent, the service of statutory garnishment and the subsequent judgment thereon, though accomplished prior to the assignments, will be abortive and defeated in its purpose. Under the ruling herein made, the grantees in the trust deeds received the subscriptions free of the garnishment lien. It may be argued that such ruling defeats the object of the garnishment law. Had the creditor availed itself of a different procedure, the chose in action may have been seized and held by the court subject to the claims of the intervenor. The court must follow the law, even though in some instances hardships may result. However, the result in this instance is not without a basis of equity and justice. The funds sought to be reached, under the ruling made, will go to the creditors who furnished labor and material to erect the mosque.

The judgment creditor in the garnishment proceeding is not among the creditors of the Building Company for labor and material. Its claim is based upon a matter entirely distinct therefrom. Under the judgment of the trial court Binns, trustee, was ordered and directed to pay to the Tile Company or its attorney all dividends on the note made by the Building Company to C. A. D. Bayley & Company for the balance of 25 per cent. not paid by the Surety Company.

■ It is contended by the plaintiff in error that if it should be held that the lien of the garnishment does not attach to the subscriptions and cash under the doctrine of lis pendens, the grantees in the trust deeds took the property subject to the garnishment judgment. Lis pendens was a doctrine of common law, and is recognized by statute in Georgia. The Civil Code (1910), § 4533, provides: "Decrees ordinarily bind only parties and their privies; but a pending suit is a general notice of an equity or claim to all the world from the time the petition is filed and docketed; and if the same is duly prosecuted and is not collusive, one who purchases pending the suit is affected by the decree rendered therein." In *Coleman* v. *Law,* 170 *Ga.* 906 (154 S. E. 445, 74 A. L. R. 684), after quoting the code, this court said: "Lis pendens is the jurisdiction, power, or control which courts acquire over property involved in a suit, pending the continuance of the action, and until final judgment therein." In *Moody* v. *Millen,* 103 *Ga.* 452, 453 (30 S. E. 258), this court said: "To the existence of a valid and effective lis pendens it is essential that three elements be present; that is, three material facts must concur; the property must be of a character to be subject to the rule; the court must have jurisdiction both of the person and the subject-matter; and the property involved must be sufficiently described in the pleadings. . . The underlying, if not the sole, object of the maxim, pendente lite nihil innovetur, is to keep the subject of the suit or res within the power of the court until the judgment or decree shall be entered, and thus to make it possible for courts of justice to give effect to their judgments and decrees."

In *Tinsley* v. *Rice,* 105 *Ga.* 288 (31 S. E. 174), it was said: "Lis pendens, which is defined to be the jurisdiction, power, or control which the court acquires over the property involved in the suit pending the continuance of the action and until its final judgment therein, has for its object the keeping of the subject, or res, within

the power of the court until the judgment or decree shall be entered, and thus to make it possible . . to give effect to their judgments and decrees." Pending a suit, when one transfers choses in action or pays money which he has either in his pocket or elsewhere, the assignee or the payee receives it without being affected by the pending suit. Any other ruling would destroy ordinary every-day commercial transactions. The banking business would be effectually strangled. Choses in action stand upon the same footing as money. "The bona fide purchaser of a negotiable paper not dishonored, or of money, or bank bills, or other recognized currency, will be protected in his title, though the seller had none. There is no 'market overt' in Georgia." Civil Code (1910), § 4118. It is clear that the litigation between Carmichael Tile Company and Bayley & Company did not involve the "subscriptions." They were not described or mentioned. Consequently the effort to apply the doctrine of lis pendens fails, under the ruling in *Coleman* v. *Law*, supra, because the pending suit did not involve the property, to wit, "subscriptions" and cash proceeds therefrom. "The doctrine of lis pendens does not apply to negotiable securities not due." *Mims* v. *West*, supra. It is stated in 18 C. J. 16, § 16: "It is well settled that the doctrine of lis pendens does not apply to negotiable paper purchased in good faith before maturity." In 38 C. J. 17, it is stated: "At common law and under statutory provisions as to lis pendens, not altering the common law in this respect, lis pendens may not be predicated upon an action or suit seeking merely to recover a personal or money judgment, such as an action of trespass, or a suit for an accounting, or upon any other action or suit which does not directly affect property." *Carson* v. *Fears*, 91 *Ga.* 482 (17 S. E. 342); *Goodwynne* v. *Bellerby*, 116 *Ga.* 901 (43 S. E. 275). Lis pendens in itself does not create a lien of any kind. It merely charges the purchaser with notice of the pending action. If the judgment in the pending action does not create a lien on the property, certainly notice of the action will not. Under the facts of this case, as stated above, it will be assumed that the subscriptions were negotiable and transferred before maturity. No presumption will be indulged in favor of lis pendens. 38 C. J. 66.

. ■ The plaintiff in error contends that the grantee in the security deed took the choses in action with notice, and therefore subject to the lien obtained by the Tile Company. Civil Code (1910),

§ 4529: "He who takes with notice of an equity takes subject to that equity." What has been said on the subject of lis pendens applies alike to "notice." Lis pendens is made by statute "general notice." Civil Code (1910), § 4533. What has been said of the contention based on lis pendens applies to the contention based on notice. *Judgment affirmed. All the Justices concur.*