## LAMAR COUNTY ADVISORY BOARD *v.* McCALLEY, receiver, *et al.*

No. 10931.   OCTOBER 17, 1935.

*E. O. Dobbs* and *John I. Kelley,* for plaintiff in error.

*Colquitt, Parker, Troutman & Arkwright, Robert S. Sams, Craighead & Craighead, Dwyer & Dwyer* and *F. L. Eyles,* contra.

GILBERT, Justice.   Lamar County Advisory Board, which succeeded the ordinary in handling the fiscal affairs of Lamar County, intervened in an equitable proceeding which had been commenced in Fulton superior court on April 29, 1933, and in which the court was administering a $25,000 bond deposit which had been made by

the National Surety Company with the State treasurer as a condition precedent to its doing business in Georgia. The surety company had become insolvent, the deposit with the treasurer had been delivered over to the court, the bonds were sold, and all parties claiming an interest in the fund were directed to intervene and set up their claims. Lamar County Advisory Board claimed that it was entitled to priority over all other parties in the distribution of the proceeds of the bond deposit. This claim arose out of the failure of the tax-collector of Lamar County to account for certain taxes collected by him, in the amount of $16,662.18. The National Surety Company was the surety on the two bonds which covered his period of office from January 1, 1921, to December 31, 1928. A fi. fa. was issued against the tax-collector and the surety company on December 8, 1933. The consolidated cases and all the interventions were submitted to an auditor for determination of all questions of law and facts. The auditor filed his report finding, first, that the Lamar County Advisory Board had a priority over all of the other parties and intervenors except the State of Georgia as to the payment of its claim out of the general assets of the surety company in the hands of the receiver; and second, that Lamar County Advisory Board was not entitled to any priority as to the payment of its claim out of the funds derived from the sale of the special bond deposit, and that the board should participate in the distribution of the funds on a pro rata basis with all other parties and intervenors. The board filed its exceptions to so much of the auditor's report as held that it was not entitled to priority of payment out of, but should share pro rata in, the proceeds of the sale of the bond deposit. Upon the hearing of the exceptions the court entered an order sustaining the findings of the auditor and overruling the exceptions. The board excepted to that order.

The sole question for decision is whether or not, as a matter of law, Lamar County is entitled to priority of payment out of the special fund derived from the sale of $25,000 worth of bonds which had been deposited with the State treasurer by the surety company in compliance with the statute. The act of 1896 (Ga. L. 1896, p. 58), as amended by the act of 1897 (Ga. L. 1897, p. 60), authorizes surety companies to be accepted upon the bonds of all city, county, and State officers of the State upon complying with conditions named in the acts. Before being accepted as surety, it is

provided, they "shall be required to deposit with the treasurer of this State bonds of the United States or bonds of this State . . which amount according to their face value to twenty-five thousand dollars, which funds shall be receipted for by the State treasurer and especially deposited by him in the vaults of the treasury; and whenever such company ceases to do business in this State and has settled up all claims against it, as hereinafter provided, and have been released from all the bonds upon which they have been taken, such bonds shall be delivered up to the proper party on presentation of the treasurer's receipt. [Code of 1933, §§ 56-1104, 56-1107.]

. . For the bonds so deposited the faith of the State is pledged that they shall be returned to the parties entitled to receive them, or disposed of as hereinafter provided. [Code of 1933, § 56-1108.] That whenever any loss insured against occurs, the insured, in order to secure his recovery, may give notice to the State treasurer of the pendency of said loss and of the amount claimed, after which time the State treasurer shall be bound to retain, subject to the order of the court trying any suit that may be brought for the recovery of such loss, a sufficient amount to pay the judgment in said case, in the event of recovery; when suit is ended, and the amount ascertained for which said party sued may be liable is not paid in ten days, then said plaintiff may file an application with the judge of the superior court of the county where the case was tried, for a receiver to take charge of so many bonds as shall be necessary to satisfy the aforesaid judgment. When said receiver is appointed by the judge, who shall always require bond and security of him for the faithful performance of his duty, said State treasurer, on his application, shall deliver to him bonds sufficient in their market value, if in his custody, to satisfy said judgment. Said receiver's receipt shall be a complete discharge to said treasurer and the State of Georgia. Then said receiver shall apply to the judge of said superior court for an order of sale, and in pursuance of said order sell said bonds. After deducting such expenses and commissions as shall be allowed by said judge, he shall pay over to the plaintiff, or his attorney, a sufficient amount to satisfy the said judgment; and if there remains any residue in the hands of such receiver, he shall pay over the same to the agent of the company, taking his receipt for the same, which shall be filed and recorded with the other papers in the case. If there are con-

flicting claims, then the State treasurer shall deliver over to the receivers, in the order of their application, the aforesaid bonds; and if there is any contest between creditors, which can not be settled in this mode, then the party not receiving sufficient bonds through the receiver appointed in his behalf may become a party to the other case and make known his claim to the other receiver by making affidavit of the claim and filing the same with him, and then the receiver shall report such claim to the judge of the superior court appointing him, who shall by order provide for a bill of interpleader, as in cases in equity. [Code of 1933, § 56-1109.] . . Whenever, by means of the provisions of this act, the amount of bonds so deposited are reduced, said treasurer shall at once notify the insurance commissioner in writing, who will give notice to the company depositing, and require more bonds to be deposited, so as to always maintain the original amount; and if the company so notified by the insurance commissioner fails to comply within thirty days, the right of the company to do business in this State shall be revoked. [Code of 1933, § 56-1115.]" Section 92-5708 of the Code of 1933, which is a codification of section 2 of the act of 1873 (Ga. Laws 1873, p. 42), provides: "Liens for taxes, whether ad valorem, specific, or occupation, due the State, any county thereof, or municipal corporation therein, shall cover the property of taxpayers liable to tax from the time fixed by law for the valuation of the same in each year until such taxes are paid, and the property of tax-collectors and their sureties from the time of giving bond until all the taxes for which they are responsible shall be paid. Such liens for taxes are hereby declared superior to all other liens; and shall rank among themselves as follows: first, taxes due the State; second, taxes due the counties of the State; third, taxes due to municipal corporations of the State." Section 92-5510 of the Code of 1933, which is the same as section 1190 of the Code of 1910 as amended by the act of 1917 (Ga. Laws 1917, p. 198), provides: "The property of tax-collectors and of their sureties, shall be bound, from the time the bonds are executed, for the payment of taxes collected and the discharge of their duties."

Does the county, by virtue of the above-quoted Code sections, have a lien, in the present case, upon the funds derived from the sale of the bonds deposited with the State treasurer? In *Eads* v. *Southern Surety Co.*, 178 *Ga.* 348 (3) (173 S. E. 163), it was

held: "The bonds on deposit with the State treasurer were choses in action to which no lien was perfected, and no lien attached in virtue of either of the several judgments." In *Carmichael Tile Co.* v. *Yaarab Temple Building Co.*, 177 *Ga.* 318 (170 S. E. 294), it was held: "An assignee of negotiable securities, bona fide before maturity, takes them free from any lien of a statutory garnishment served on the assignee prior to the assignment, requiring the assignor to answer what the latter is due a debtor of the garnishor." The two cases just mentioned are referred to here because it might be urged that they justify the position taken by the defendants in error that the county had no lien on the deposited bonds or the funds derived from the sale thereof, and was not entitled to any priority of payment in the distribution of the funds by the court; but neither of the cases is in conflict with what is here ruled. In the *Carmichael Tile Co.* case a creditor had filed suit and on the same day caused service of garnishment to be made on the debtor. The latter subsequently, and before a general judgment had been obtained in the main suit on the indebtedness, assigned bona fide certain choses in action which it held at the time of the service of garnishment. It was said that the garnishment before judgment in the main suit did not create an absolute lien upon the choses in action; that a general judgment established a lien only upon such property "as is capable of actual seizure, sequestration, and delivery in satisfaction of the creditor's demand;" and that after a general judgment, "in order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments. The fund must be reached either by process of garnishment or by some collateral proceeding instituted for the purpose of impounding it so that it can be applied in satisfaction of the judgment. Until it has been so seized by the courts for the purpose of appropriating it to the payment of the judgment, it is still subject to the dominion and control of the debtor, and he may make a bona fide assignment or transfer of the fund in satisfaction of pre-existing debts, and the person receiving it in pursuance of such transfer and assignment will take it freed from the general lien established by law in favor of a judgment creditor against the property of the assignor." It was further stated that "The phrase used in the above-quoted opinion, 'the fund must be reached either by process of garnishment or by some

collateral proceeding,' etc., does not mean that the mere service of a statutory garnishment, or a judgment thereon, is sufficient to establish the lien. It does mean that the fund must be reached by process of garnishment to the extent that the fund is placed in the possession of the court or has been seized by the court and thus is within its power of disposition." And, "Had the creditor availed himself of a different procedure, the chose in action may have been seized and held by the court subject to the claims of the intervenor." Can it be likewise said that the county in the present case, not having a judgment against the surety company and no lien on any of its property "capable of actual seizure, sequestration and delivery" at the time it intervened in the equitable proceeding, had no priority which it could set up in that proceeding? We think not.

Under the Code section 92-5708, quoted hereinbefore, it is provided that the liens for taxes due the county shall cover "the property of taxpayers liable to tax from the time fixed by law for the valuation of the same in each year until such taxes are paid, and the property of tax-collectors and their sureties from the time of giving bond until all the taxes for which they are responsible shall be paid," and that such liens "are hereby declared superior to all other liens; and shall rank among themselves as follows: first, taxes due the State; second, taxes due the counties of the State," etc. In section 92-5510 it is further provided that "The property of tax-collectors and of their sureties shall be bound, from the time the bonds are executed, for the payment of taxes collected and the discharge of their duties." Thus, from the day of the execution of the bond by the tax-collector and his surety the county had a lien upon his property and that of his surety, subject only to the superior lien of the State for taxes due it. Although the lien of the county could not be enforced in a proceeding at law against the deposited bonds while in the hands of the State treasurer, such bonds were property of the surety; and when, under the provisions of the statute, they were delivered to and sold by the receiver of the court, the proceeds constituted a res which could be distributed by the court upon equitable principles. In *Seay* v. *Bank of Rome,* 66 *Ga.* 609, 614, where the court was dealing with a lien of the State upon the property of a State depository, the principle was well stated: "Are not notes and accounts property? Can any rea-

son be given why it is not competent for the legislature to give a lien upon notes and accounts, as well as upon any other property? Now the fi. fa. issued by the Governor has been levied, by the sheriff of Floyd County, upon such of the property of the bank as was subject to levy and seizure under that process; he has not levied upon the choses in action, because the law will not permit him to do so; but does the State lose the lien established by law, simply because it can not be enforced at law? The assets of this bank are legal assets (18 *Ga.* 108); they are in the possession of a court of equity, placed there by the act of complainant; why not enforce the lien then? Equity is not antagonistic to, it follows, the law, and we see no reason why a court of equity will not collect these legal assets of the bank, and distribute the fund, recognizing and enforcing the liens and priorities established by contract and by law." So it is our opinion that the court erred in decreeing that the county did not have a priority of payment from the funds realized from the sale of the choses in action, the bonds which had been delivered to the receiver by the State treasurer in pursuance of the statute. The court should have decreed that the county, because of the lien given by the General Assembly superior to that of the other claimants, was entitled in the equitable proceeding to have it enforced out of the res in the hands of the court.

*Judgment reversed. All the Justices concur, except Russell, C. J., absent because of illness.*