PINK, superintendent, *v.* McCALLEY, receiver, *et al.*

No. 11227. JULY 16, 1936.

*Hooper & Hooper* and *Samuel A. Miller,* for plaintiff in error.
*Crenshaw, Hansell & Gunby* and *Warren Cox,* contra.

ATKINSON, Justice. The assets of the National Surety Company were being administered by the insurance commissioner of the State of New York as liquidator, with W. L. McCalley Jr., as ancillary receiver in Georgia. Bonds deposited with the State treasurer of Georgia were turned over to the Georgia receiver and by him converted into cash. A question arose between Lamar County Advisory Board and other creditors as to the county's claim of priority to be paid from such fund on account of a loss

insured against by such surety company, and the case was brought to this court. *Lamar County Advisory Board* v. *McCalley*, 181 *Ga.* 329 (182 S. E. 6). It was held that the county was entitled to a priority of payment, as against certain other creditors, out of the proceeds of the bonds in the hands of the receiver appointed by the court, which bonds had been deposited with the State treasurer by the surety company under the act of 1896 (Ga. Laws 1896, p. 58), as amended by the act of 1897 (Ga. Laws 1897, p. 60), Code §§ 56-1104 et seq. After that decision, the receiver filed with the court a petition for direction as to whether the amount due the county should be paid by him out of such special fund or out of the company's general assets which he held. To a rule nisi issued by the court to all parties involved, the insurance commissioner of the State of New York, as liquidator, filed a response in which he contended that the payment to the county should be made from the special fund. Before a hearing was had, the court, on motion of the county, passed an order authorizing the receiver to pay the county the principal amount of its claim out of the special fund, providing in the order that at the subsequent hearing on the petition of the receiver such payment might be reallocated as between the special fund and the general assets. At a subsequent date, before the hearing on the receiver's petition, the court passed an order directing the receiver to pay the county the amount of interest on its claim, to be paid out of the special fund, the final allocation to be determined by the court at a later date. After the hearing on the receiver's petition the court passed an order that the receiver charge all sums paid in satisfaction of the claims of the State of Georgia and Lamar County Advisory Board against the general assets; and that, "to the extent that at the present time the cash assets in the hands of the receiver in the general account are insufficient to satisfy the claims of the State of Georgia and Lamar County Advisory Board, such deficiency shall be temporarily charged to the proceeds of the special bond deposit; but when other funds are acquired by and added to the general funds in the hands of the receiver (other than the proceeds of the sale of the special bond deposit), the special bond deposit shall be reimbursed from such general proceeds to the extent that funds from the special bond deposit have been used to pay the Lamar County Advisory Board and the State of Georgia." The respondent, Louis H. Pink,

Superintendent of Insurance of the State of New York, as liquidator of the National Surety Company, excepted.

Under the Code, § 56-1107, fidelity insurance companies doing business in this State are required to deposit with the State treasurer $25,000 in bonds. § 56-1109 prescribes the purposes of the deposit and designates the class for whose benefit the bonds are deposited. It provides that the bonds are to secure them "whenever any loss insured against occurs." Only those who have sustained losses insured against are thus protected. Other creditors do not share in that benefit, which is referred to as a "special fund." If there are no such parties, or if such claims do not exhaust the special fund, then any balance remaining would be subject to the demands of other creditors of the surety company. In the present case only approximately $2,000 remained in the special fund after the payments to the county. It is conceded by all the parties that under the decision rendered by this court (supra), payment to Lamar County Advisory Board of the principal and costs was authorized, but it is set up in the response of the liquidator for the insurance company, though not argued in his brief, that interest was not allowable after the receivership began. The balance of the "special fund," after the payment to the county, was subject to the claims of other creditors whose losses were incurred and insured against, and as to any unpaid balance due them they are entitled to share with general creditors pro rata in the general assets. There is no law that authorizes any court to increase the "special fund" by transferring to that fund amounts which properly belong in the general fund. To do so might deprive creditors who have the legal right to share in the general fund but do not share in the "special fund." As against this principle, the defendants in error contend that while perhaps subrogation, strictly speaking, is not involved, a principle similar or kindred to subrogation is involved, and that a court of equity should apply that principle, because the court, under the request of the receiver for direction, in ordering the payment to the county included in its judgment a provision for reallocation, that is, that payment be made from the general fund, as its assets were converted into cash, to reimburse the "special fund" for the amount used from it in paying the county. There is no principle of subrogation in the case. The creditors who insist upon that principle

have done nothing that would entitle them to subrogation by the application of any principle analogous to subrogation. If they had wished to do so, such creditors could have paid the claim of the county and have taken an assignment from it, but this was not done. They did not pay off any superior lien or priority in order to protect the lien or claim of their own. They are merely claiming subrogation on the basis that the court ordered certain payments. There is no principle of law that would take this out of the usual rule that the funds derived from the sale of such bonds deposited with the State treasurer, as was true in the present instance, are to be applied for special purposes, and when that is done any balance left in the special fund is subject to the demands of all creditors, according to their legal rights and priorities. The defendants in error concede that on the question here presented there are no Georgia cases directly in point. The court has already ordered that the county be paid, and it has been paid, and no one is contesting the legality of such payment. The amount should have been charged against the special fund. According to the record, the general assets were wholly insufficient to pay the claim of the county at the time, the amount of cash on hand being only a small part of the total claim of the county, the amount of the bonds and mortgages being uncertain as to collection, and there being pending litigation with respect to at least a great part of the choses in action. Obviously the general assets were not equally accessible to the county for the payment of its claim. The court erred in ordering the receiver to charge such payment against the general assets, and providing for certain allocation as between the special fund and the general assets, instead of ordering such payment to be charged unconditionally against the special fund.

*Judgment reversed. All the Justices concur.*