**In the Matter of Edgar Mitchell SMITH, Jr., Debtor.**

**Ernest V. HARRIS, Trustee, Plaintiff,**

**v.**

**C. C. DICKSON, INC., Defendant.**

**Bankruptcy No. 80–00100–Ath.**
**Adv. No. 81–3018.**

United States Bankruptcy Court,
M. D. Georgia,
Athens Division.

Jan. 21, 1982.

542

Ernest V. Harris, Athens, Ga., trustee, pro se.

James E. McDonald, Jr., Athens, Ga., for C. C. Dickson, Inc.

## MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

On September 4, 1980, Edgar Mitchell Smith, Jr., Debtor, filed in this Court his voluntary petition under Chapter 7 of Title 11 of the United States Code, and Ernest V. Harris (hereinafter Trustee) was appointed as trustee of the Debtor's bankruptcy estate.

On April 7, 1981, the Trustee filed an adversary proceeding seeking the turnover of certain property, the avoidance of a fraudulent conveyance, the determination of the extent and validity of a certain lien, and the removal of a state court proceeding from the Superior Court of Oconee County, Georgia, to this Court. The Debtor, the Debtor's wife and daughter, the Oconee State Bank, and C. C. Dickson, Inc. were named as defendants in this adversary proceeding.

By order of this Court dated July 16, 1981 and after notice and a hearing, this adversary proceeding was compromised as to the Debtor and the Debtor's wife and daughter. Since the Trustee has dismissed his adversary proceeding as to the Oconee State Bank, there remains only one defendant before the Court, that being C. C. Dickson, Inc. (hereinafter Defendant).

The matter before the Court is the Trustee's Motion for Summary Judgment. The parties agree that there is no dispute as to the facts in this case, and that the matter can be decided as a matter of law.

After consideration of the evidence and the briefs of counsel, the Court has this day entered an order determining the claim of the Defendant to be unsecured. In support of its order, the Court attaches the following findings of fact and conclusions of law. To the extent any findings of fact constitute conclusions of law or any conclusions of law constitute findings of fact, they are so adopted.

### FINDINGS OF FACT

The Debtor and his brother, John Rayle Smith, at an undisclosed time but prior to June of 1978, acquired ownership of certain real estate located in Elbert County, Georgia, with each owning a one-half undivided interest.[1] This real estate was pledged by them to the Oconee State Bank as security for a loan which they received to finance their business operation.

In June of 1978, John Rayle Smith conveyed his one-half undivided interest in this real estate to himself in trust for his two children. In January of 1979, the Debtor conveyed his one-half undivided interest in the property to his wife and daughter.

On July 3, 1979, the Defendant obtained a judgment against the Debtor in the Superior Court of Clarke County. This judgment was recorded on the General Execution Docket in Clarke County, Georgia, on July

1. The record indicates that this ownership may have been subject to a life estate in their father, but since this is a fact which was not argued by either party to this adversary proceeding, the Court will treat the life estate as irrelevant to the issue before it.

17, 1979 and on the General Execution Docket in Oconee County, Georgia, on August 1, 1979.

On September 4, 1980, the Debtor filed his bankruptcy petition in this Court, and the Trustee was appointed to administer the bankruptcy estate.

On September 17, 1980, the Defendant recorded its judgment on the General Execution Docket in Elbert County, Georgia.

During November of 1980, the Oconee State Bank foreclosed its security interest on the Elbert County real estate and realized $25,006.82 in excess of the sum due it.

The Oconee State Bank, being aware of the Debtor's bankruptcy and further being aware that other entities were asserting claims against this excess, caused a counterclaim for interpleader to be filed in a case pending in the Superior Court of Oconee County. As a result of this interpleader, the Trustee and the Defendant were made parties plaintiff to the case. Since all parties agreed that one-half of the excess ($12,503.21) could be traced to the Debtor's interest in the real estate, it was agreed by all parties that the Oconee Superior Court case, as to the Debtor's interest, should be removed to this Court, and the proper steps were taken for the removal, which resulted in the removed case becoming part of this adversary proceeding.

On June 18, 1981, the Trustee filed an Application to Compromise Controversy, which sought leave to compromise this adversary proceeding as to the Debtor and the Debtor's wife and daughter. The application disclosed that the Trustee held in trust, as an asset of the Debtor's bankruptcy estate, the sum of $20,503.41. This sum represents the $12,503.41 payment from the Oconee Superior Court action and $8,000.00 realized from the sale by the Trustee of the Debtor's interest in McDaniel Mills Properties, a limited partnership. The application provided that the Trustee could make certain payments to the Debtor, his wife, and daughter in final settlement of their claims against the bankruptcy estate, and that the Trustee would retain the sum of $13,978.41 for the bankruptcy estate. Notice of the Trustee's application and an opportunity to object were given to all parties in interest, including the Defendant. No objection was filed with the Court, and by order dated July 16, 1981, the Court granted the Trustee's Application to Compromise Controversy.

The Trustee thus holds the sum of $13,978.41 in trust as an asset of the Debtor's bankruptcy estate. The Defendant claims that it is a judgment lien creditor of the Debtor, and thus asserts that it is entitled to recover from the bankruptcy estate as if it were a secured claimant.[2]

## CONCLUSIONS OF LAW AND DISCUSSION

The sole question before the Court is whether the Defendant is entitled to participate in this bankruptcy case as a secured claimant on account of its having obtained a judgment lien against the Debtor prior to the filing of his bankruptcy petition.

The facts in this case are not disputed, and thus the case turns upon the application of the law to these undisputed facts.

The Defendant has a claim on file with the Court in the amount of $14,095.14 and asserts that its claim is secured because of its judgment lien. No objection has been filed to this claim. Thus, under Section 502 of the Bankruptcy Code, 11 U.S.C.A. § 502 (West 1979), the claim is deemed allowed, but this allowance only addresses the amount of the Defendant's claim.

Whether the Defendant's claim is secured and to what extent must be determined by an application of Section 506 of the Bankruptcy Code, which states:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject

2. The Defendant's judgment is in the amount of $13,000.00 principal with interest at the rate of six percent from February 7, 1978 and was entered against Defendants, Dorsey Heating & Air Conditioning Co., Inc.; Edgar Mitchell Smith, Jr.; and John Rayle Smith on July 3, 1979. The record discloses no payments on this judgment.

to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title.

11 U.S.C.A. § 506 (West 1979).

As used in Section 506, lien "means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C.A. § 101(28) (West 1979). This definition includes a "ju-

dicial lien" which is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C.A. § 101(27) (West 1979).

In Georgia, it can be generally stated that a judicial lien attaches to "all of the property" of a judgment debtor upon the date of the judgment. *In re Tinsley*, 421 F.Supp. 1007 (M.D.Ga.1976) aff'd 554 F.2d 1064 (5th Cir. 1977).[3] In this case, the Defendant obtained a judgment against the Debtor on July 3, 1979, and thus from that date, would have a judicial lien on "all of the property" of the Debtor. This judicial lien is continuing until satisfaction or dormancy of the judgment and attaches to after-acquired property of the Debtor.

The Defendant thus, upon the filing of the Debtor's bankruptcy petition on September 4, 1980, had a judicial lien on the Debtor's property. On the filing of the Debtor's bankruptcy petition, an estate was created and all of his property passed by operation of law into that estate. 11 U.S.C.A. § 541 (West 1979). The question thus presented is whether the Trustee now holds, as part of the bankruptcy estate, assets which are impressed with the Defendant's judicial lien. If the Trustee does hold such assets, then the next step would be to determine the value of these assets in order to determine the extent of the Defendant's secured status, which in this case would be academic because the assets have already been converted to cash.

The Trustee, prior to the compromise of the controversy with the Debtor and the Debtor's wife and daughter, held in trust the sum of $20,503.41, representing $12,-503.41 as excess from the foreclosure of the Elbert County real estate and $8,000.00 from the sale of the Debtor's interest in McDaniel Mills Properties, which is a limited partnership.

The evidence discloses that upon the Debtor's filing in bankruptcy, he had no ownership interest in the Elbert County

---

3. There are certain limitations on this statement as to "all of the property," and one of those limitations will be discussed hereinafter in the Court's analysis of the $8,000.00 received by the Trustee from the sale of the Debtor's interest in McDaniel Mills Properties.

real estate because it was titled in his wife and daughter. Whether the Debtor's transfer of his one-half undivided interest in the Elbert County property to his wife and daughter could have been avoided by the Trustee is not at issue because that aspect of this adversary proceeding has been settled with no objection from the Defendant. Thus, the funds that the Trustee holds, which can be traced to the Elbert County real estate, are free and clear of the Defendant's judicial lien because this real estate was never a part of the bankruptcy estate. It therefore never entered the estate impressed with any lien in favor of the Defendant.

█ The Trustee also received the sum of $8,000.00 from his sale of the Debtor's interest in the limited partnership known as McDaniel Mills Properties,[4] and whether the Defendant's judicial lien had attached to the interest of the Debtor in this limited partnership is a question of state law. 4 Collier on Bankruptcy ¶ 67.03[3], N.43 (14th ed. 1967).

Under Georgia law, a limited partner's interest in the partnership is personal property. Ga.Code Ann. § 75–419 (1981). Since a judgment in Georgia creates a lien which binds all of a judgment defendant's real and personal property, Ga.Code Ann. § 110–507 (1973), it would appear that a limited partner's interest in the partnership would be bound by the judgment lien. This conclusion, while apparently required on first examination, is not sustainable upon careful analysis.

The question of whether a judgment against a limited partner creates a lien against his partnership interest appears to be one of first impression in Georgia, as this Court has been unable to find any decision in Georgia on this question by either a state court or federal court. Still, federal courts

are required to apply state law in certain instances "whether or not the state has provided any guidance for the decision; accordingly, federal courts sometimes must decide issues of state law even in the complete absence of relevant state statutes and cases." *Perkins State Bank v. Connolly,* 632 F.2d 1306, 1320 (5th Cir. 1980). See also, *Smoot v. State Farm Mutual Automobile Insurance Co.,* 299 F.2d 525 (5th Cir. 1962).

In Georgia, when a judgment has been obtained against a limited partner, the Georgia Code gives to that judgment creditor the following rights:

(1) On due application to a court of competent jurisdiction by any judgment creditor of a limited partner, the court may charge the interest of the indebted limited partner with payment of the unsatisfied amount of the judgment debt; and may appoint a receiver and make all other orders, directions, and inquiries which the circumstances of the case may require.

(2) The interest may be redeemed with the separate property of any general partner, but may not be redeemed with partnership property.

(3) The remedies conferred by paragraph (1) shall not be deemed exclusive of others which may exist.

(4) Nothing in this Chapter shall be held to deprive a limited partner of his statutory exemption.

Ga.Code Ann. § 75–423 (1981).

In its analysis of the question before it, the Court must first turn to consider the nature of a limited partner's interest in a partnership. It is obviously a chose[5] because the Georgia Code declares it to be one, but a chose may be either a chose in possession or a chose in action. A chose in

4. While the parties presented no evidence as to the limited partnership, the Debtor's schedules reveal that this is a limited partnership which holds real estate in Rockdale County, Georgia. The Trustee's "Application for Leave to Compromise Controversy," which was filed with the Court on March 27, 1981 and which dealt with the Debtor's interest in McDaniel Mills

Properties' limited partnership, reveals that the Debtor was a limited partner in it.

5. A thing; an article of personal property. A chose is a chattel personal, (Williams, Pers. Prop. 4,) and is either in action or in possession. Black's Law Dictionary 304 (revised 4th ed. 1968).

possession is personal property that is actually in possession, and thus personal property that can actually be enjoyed. On the other hand, a chose in action is the right to personal property that is not in possession, which can be enforced by legal action. *Sterling v. Sims*, 72 Ga. 51 (1883). One of the most obvious examples of a chose in action is stock in a corporation, *Fourth National Bank v. Swift & Co.*, 160 Ga. 372, 127 S.E. 729 (1925), but is a limited partner's interest in a partnership also a chose in action.

The rights of a limited partner in the partnership are as follows:

(1) A limited partner shall have the same rights as a general partner to

(a) Have the partnership books kept at the principal place of business of the partnership, and at all times to inspect and copy any of them.

(b) Have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable.

(c) Have dissolution and winding up by decree of court.

(2) A limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in sections 75–416 and 75–417.

Ga.Code Ann. § 75–411 (1981).

He is thus entitled to share in the profits or other compensation by way of income and is also entitled to a return of his contribution. He thus does not have possession of any of the partnership assets but has rights under the terms of the partnership agreement which are enforceable by law. He is dependant upon the limited partnership agreement to which he is a party for his rights, and based upon this analysis, the Court must find that a limited partner's interest in the partnership is a chose in action. He has no present possession but a right of possession in the future based upon

his rights under the limited partnership agreement.[6]

Having determined that the Debtor's interest in the partnership is a chose in action, the question thus presented is whether Section 110–507 of the Georgia Code gives to the Defendant a lien against this chose in action. An analysis of the law of Georgia discloses that it does not. The leading case in Georgia on this question is the case of *Fidelity and Deposit Co. v. Exchange Bank*, 100 Ga. 619, 28 S.E. 393 (1897), in which the Supreme Court of Georgia said:

2. As we have heretofore seen, choses in action are not subject to seizure and sale under executions based upon ordinary judgments. In order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments. The fund must be reached either by process of garnishment, or by some collateral proceeding instituted for the purpose of impounding it so that it can be applied in satisfaction of the judgment. Until it has been so seized by the courts for the purpose of appropriating it to the payment of the judgment, it is still subject to the dominion and control of the debtor, and he may make a bona fide assignment or transfer of the fund in satisfaction of pre-existing debts, and the person receiving it in pursuance of such transfer and assignment, will take it freed from the general lien established by law in favor of a judgment creditor against the property of the assignor . . . . .

100 Ga. at 625, 28 S.E. 393.

This holding of the Supreme Court of Georgia has been followed in a number of other cases, and special note should be taken of the *Fourth National Bank v. Swift & Co.* case wherein the Supreme Court of Georgia succinctly stated the law of Georgia to be:

The sum and substance of the holding in the *Fidelity Co.* case is that a chose in

---

6. See the case of *Ivey v. Gatlin*, 194 Ga. 27, 20 S.E.2d 592 (1942), which while not specifically holding a partnership interest to be a chose in action, the court seems to have accepted that it was a chose in action.

action can not be reached by direct levy. In order to subject it to the lien of a judgment there must be some preliminary or collateral proceeding to subject the chose in action, or such must have been had before it can properly be considered by the court in an adjudication upon a rule to distribute.....

*Fourth National Bank v. Swift & Co.*, 160 Ga. 372, 377, 127 S.E. 729 (1925).

If the Defendant's general judgment lien was to attach to the Debtor's interest in the partnership, it was necessary for the Defendant to comply with the requirements of Section 75–423(1) of the Georgia Code, which gives the Defendant the right to apply to a court of competent jurisdiction for that court to charge the Debtor's partnership interest with payment of the unsatisfied amount of its judgment. While no Georgia case could be found by this Court dealing with this procedure of applying for a "charge order," several courts in other jurisdictions have analyzed it. Cf. *Pischke v. Murray (In re Pischke)*, 11 B.R. 913 (Bkrtcy.Ct.E.D.Va.1981); *Bank of Bethesda v. Koch*, 44 Md.App. 350, 408 A.2d 767 (Md. Ct.Spec.App.1979); *Baum v. Baum*, 51 Cal.2d 610, 335 P.2d 481 (Cal.1959); *Sherwood v. Jackson*, 121 Cal.App. 354, 8 P.2d 943 (Cal.Dist.Ct.App.1932). From an analysis of these decisions, it is clear that the charge order is a substitute for execution, attachment, levy and sale, or garnishment, and that the charge order is the exclusive remedy for a creditor of a limited partner.

The Defendant has failed to comply with the requirements of obtaining a charge order, and its judgment lien did not therefore attach to the Debtor's interest in McDaniel Mills Properties. This asset thus entered the bankruptcy estate free of the Defendant's judgment lien. The Defendant must therefore be found by this Court to be an unsecured claimant.