In re James **MATHIASON** and Gladys Mathiason, Debtors.

Bankruptcy No. 3–86–2340.

United States Bankruptcy Court, D. Minnesota, Third Division.

June 10, 1991.

James Dailey, Mankato, Minn., for debtors.

Mark C. Halverson, Mankato, Minn., trustee.

James Kerr, Irons and Kerr, Tracy, Minn., for Earl Cameron Probate Estate.

Reed Glawe, New Ulm, Minn., for Farm Credit Services.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter is before the Court on several motions. The Trustee, Mark Halverson, and attorney James Kerr seek attorney's fees for services rendered in the prosecution of a fraudulent conveyance action. The estate's only creditors, Farm Credit Services of Mankato and Earl Cameron Probate Estate (Cameron), each object to the other's claim. Halverson and Kerr object to each other's fees, and Farm Credit Services objects to Kerr's fees. Appearances are as noted in the record. The Court, having received evidence, reviewed briefs, and heard oral arguments, and now being fully advised in the matter, makes this ORDER pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

This case was filed under Chapter 7 on August 29, 1986. On August 8, 1985, the Debtors fraudulently conveyed 80 acres of their farmland to Glen and Patti Mathiason. On December 21, 1985, Cameron obtained a general judgment against the Debtors in the amount of $61,307.56, which was docketed in Cottonwood County, where the fraudulently conveyed real estate is located, on February 10, 1986.

Cameron, through James Kerr, filed and began prosecution of a fraudulent conveyance action against Glen and Patti Mathiason in an adversary proceeding arising out of this bankruptcy on January 13, 1988. On December 14, 1988, the Court (Judge Gregory Kishel), pursuant to motion of the Defendants, ordered that the proceeding be dismissed unless the Trustee be substituted as the "real party in interest" plaintiff in the action. The Trustee was substituted as the plaintiff on January 25, 1989, and later obtained summary judgment on the merits, which judgment was affirmed on appeal to the district court on June 27, 1990.

The Trustee subsequently sold the recovered property for $88,000.00. At that point, the Debtors sought to exempt the proceeds as homestead proceeds, but the motion was withdrawn at the hearing, and the Court enjoined the Debtors from filing any further amendments to their B-4 exemption schedules.

In the meantime, Cameron filed its claim as a secured claim and asserted lien rights against the real estate proceeds, based on its general judgment docketed in 1986. It also moved for an award of attorney's fees in the amount of $18,000.00, for services rendered by Kerr in the adversary proceeding prior to the Court-ordered substitution of party plaintiff. Farm Credit objected to allowance of the claim as a secured claim, and requested careful review by the Court of Kerr's fees in order to prevent undue

erosion of bankruptcy estate assets. Halverson had already filed his motion for attorney's fees and costs in the amount of $39,316.99 [1]. The Trustee initially expressed concern about (but not objection to) Cameron's claim being allowed as a secured claim and the amount of Kerr's fees. By the time of hearing, the Trustee had joined Farm Credit in objecting to the nature of the claim.

Cameron responded by going on the offensive. It asserted that Farm Credit has no standing to object to its claim and announced its own objection to allowance of the Farm Credit claim. Cameron also objected to Halverson's fees as being excessive, and asserted that the Trustee had an inherent conflict of interest in serving as a professional on a contingent fee arrangement.

These matters were all heard on March 22, 1991, whereupon the Court (Judge Dennis D. O'Brien) invited further briefs. The last brief was filed on April 25, 1991, and there now seems to be no alternative other than to judicially deal with this unfortunate state of affairs.

## II.

*Objections To Claims.*

■ Dealing first with the objections to claims, individual unsecured creditors have standing to object to claims, notwithstanding that the trustee has a duty to review claims and object to them where appropriate. *See:* Fed.R.Bankr.P. 3007, and advisory committee notes to the Rule. Farm Credit's claim is based on two notes, one of which was secured by a mortgage on property that had been owned by the Debtors but foreclosed upon, leaving a deficiency.

Cameron argues that Farm Credit waived its right to the deficiency on the note by foreclosing the mortgage, *citing* Minn.Stat. § 582.30 Subd. 5.[2] However, the

---

**1.** The Trustee obtained employment as a professional to prosecute the fraudulent conveyance proceeding on a contingent fee arrangement that would pay him 40% of any recovery in the event of an appeal through the district court. In addition to the recovered property that was

sold for $88,000, the Trustee realized $6,000 in rents.

**2.** The statute was enacted in 1986, and provides in pertinent part:
  **Subd. 5. Mortgage on agricultural property entered on or before March 22, 1986.**

mortgage was foreclosed prior to the effective date of the statute, and the argument can prevail only if one accepts the premise that the statute operates retroactively. No evidence from the statute itself, or from the legislative history, suggests that the legislature intended such an unconstitutional result. In fact, the plain language of the statute, applies only to mortgages entered on or after March 22, 1986. The mortgage in question was foreclosed in November 1985.

■ Cameron also argues that the note might have been extinguished by the Debtors' quit claim deed granted to Farm Credit after the redemption period had expired. However, it appears that the deed was given to convey rights of first refusal.

The other note was executed by the Debtor James Mathiason and Glen Mathiason, who is a debtor in a separate case. That note was secured by a mortgage on real estate owned by Glen Mathiason. The mortgage has been foreclosed on that property also. Cameron argues that Farm Credit waived its rights to deficiency under the note by foreclosing the mortgage, again asserting application of Minn.Stat. § 582.30 Subd. 5. However, the mortgage was again foreclosed prior to the effective date of the statute.

Alternatively, Cameron argues that it is unclear whether James is an accommodation party, a guarantor, or whether he has any liability at all under the note. However, *prima facie* liability is evident on the face of the instrument, and Cameron has come forward with no credible contrary evidence.

> (a) If a mortgage entered on or before March 22, 1986 on property used in agricultural production is foreclosed and sold, a deficiency judgment may only be obtained by filing a separate action for a deficiency judgment within 90 days after the foreclosure sale....

**3.** The relevant statute, in effect at the time Cameron's judgment was docketed, read:

> (1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser:

Based on the forgoing discussion, the objection to the claim of Farm Credit must be overruled. Farm Credit has an allowable unsecured claim in this bankruptcy case in the filed amount of $123,882.84.

■ Farm Credit, and now the Trustee, object to allowance of Cameron's claim as a secured claim. Farm Credit's main argument is that Cameron had not obtained a judicial determination that the transfer was fraudulent prior to the filing of the bankruptcy case, and that, therefore, the property did not come into the estate burdened with its general judgment lien. Apparently, the argument is that the general judgment lien did not attach to the property in the absence of a fraudulent conveyance judgment. Farm Credit then argues that, pursuant to 11 U.S.C. § 551, the fraudulent transfer was preserved for the benefit of the bankruptcy estate upon the Trustee's later avoidance under § 544. Accordingly, it asserts, § 551 prevented the judgment lien from attaching post-petition upon the Trustee's avoidance of the transfer under 11 U.S.C. § 544. The argument is not persuasive.

■ It is vintage law in Minnesota that a general judgment lien attaches to fraudulently conveyed real property upon the docketing of the general judgment in the county where the real estate is located, even though title and possession of the property are both in the fraudulent grantee at the time of docketing.[3] *See: Wadsworth v. Schisselbauer*, 32 Minn. 84, 19 N.W. 390 (1884).[4] Accordingly, Cameron's judgment lien attached to the fraudulently conveyed property at the time that the

> (a) Have the conveyance set aside or the obligation annulled to the extent necessary to satisfy his claim, or
> (b) Disregard the conveyance and attach or levy execution upon the property conveyed.
> *Rights of Creditors Where Claims Have Matured.* Minn.Stat. § 513.28 (1921).

**4.** In support of its argument, Farm Credit restates Judge Kishel's observation in overruling an objection to the homestead exemption, claimed in this property by Glen and Patti Mathiason, that, until a creditor obtains judicial determination that a transfer violates the fraudulent conveyance statute, legal and equitable titles remain in the grantee. *See: In re Mathiason*, Order Overruling Objection to Claim of

judgment was docketed in Cottonwood County on February 10, 1986.

11 U.S.C. § 551 does not operate to somehow make Cameron's perfected lien disappear upon the Trustee's later avoidance of the transfer. Section 551 preserves an avoided transfer only with respect to property of the estate. It is intended to prevent junior lienors from improving their position at the expense of the estate when a senior lien is avoided. *See:* 11 U.S.C. § 551; and, *House and Senate Reports (Reform Act of 1978),* (H.R.Rep. No. 595, 95th Cong., 1st Sess. 376 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787). It is not intended to strip from recovered property, interests equal or senior to the transfer avoided. Cameron's general judgment lien attached to the property upon docketing of the judgment, and, from the filing of the bankruptcy case, it remained at all times an interest senior to the bankruptcy estate's interest in the property. The lien was not extinguished or subordinated to the bankruptcy estate's interest by § 551, as it was at all times senior to the transfer avoided and recovered, namely—the Debtors' interest.

■ At the time Cameron's judgment was docketed, and until the entry of judgment of fraudulent conveyance in the Bankruptcy Court, the property was occupied by the fraudulent grantees as their homestead. The Trustee argues that because of this, Cameron's lien did not attach to the fraudulently conveyed property, *citing Hentges v. P.H. Feely & Son,* 436 N.W.2d 488 (Minn.App.1989). In *Hentges,* the debtor owned non-homestead real estate at the time that a general judgment was entered against him. Apparently,

when the judgment was docketed, he misrepresented that the property was his homestead.

Subsequent to entry of the judgment, the debtor actually did homestead the property, and, later, while still occupying the premises as his homestead, he sold it on contract for deed to grantees. The judgment creditor sued the grantees, alleging a superior interest in the property based on fraud, apparently both on the part of the grantor debtor and the grantees, in the conveyance.

The court found that, at the time of the conveyance, the property was homesteaded by the judgment debtor grantor, and was not subject to the judgment creditor's lien. The court then noted that exempt property is not susceptible of fraudulent alienation regardless of motive or intent of the parties to the transaction. *See: Hentges, supra,* at p. 491.

The case has no application to the facts here. No allegation, much less showing, has been made that the Debtors, James and Gladys Mathiason, homesteaded the property in question at the time of the conveyance to Glen and Patti. The fact that the conveyance was found to be fraudulent, pursuant to the plaintiff Trustee's motion for summary judgment in the adversary proceeding, belies any such suggestion. Finally, although after the judgment was entered the Debtors James and Gladys attempted to amend their schedule B–4 to claim the recovered property under the homestead exemption, the motion was withdrawn, and they were enjoined from further amendments by order of the Court on request of the Trustee.

Accordingly, based on the foregoing discussion, the objections of Farm Credit and

Exemption, Bky. No. 3–86–2339, p. 3 (Judge Kishel, January 9, 1987). However, that is only for purposes of defining the relative rights of other third parties and the parties to the fraudulent transaction. *See: Lawson v. Liberty Nat'l Bank & Trust Co.,* 18 B.R. 384, 386 (D.C.N.Y.1982). The absence of a fraudulent conveyance judgment does not prevent a general judgment lien, arising from a judgment against the fraudulent grantor, from attaching to property, the title to which is in the hands of the fraudulent grantee. *See: Wadsworth v. Schisselbauer,* 32 Minn. 84, 19 N.W. 390 (1884); and, *Lawson v. Liberty Nat'l, supra.* Farm Cred-

it also cites *Harris v. C.C. Dickson, (In re Smith),* 17 B.R. 541, 544–45 (Bankr.M.D.Ga.1982) for the proposition that fraudulently conveyed property does not enter the bankruptcy estate of the fraudulent grantor debtor impressed with any post-transfer general judgment lien, in the absence of a prepetition fraudulent conveyance judgment. However, the case is wrongly cited for that proposition. There is no fraudulent conveyance issue involved in the decision, which the court specifically notes in the opinion. *See: Harris v. C.C. Dickson,* at p. 545. The case simply cannot be read to support Farm Credit's position.

the Trustee to the nature of Cameron's claim must be overruled. The claim, filed in the amount of $81,000.00, together with accruing interest, must be allowed as a secured claim against the proceeds from sale of the recovered property.

*Attorneys' Fees.*

■ Services rendered by Kerr were in furtherance of the interests of Cameron in the fraudulent conveyance action. That those services might also have incidentally benefitted the bankruptcy estate is not enough to justify an award of attorney's fees, payable out of estate property.[5] Consequently, Kerr must look to Cameron, or its recovered lien proceeds, for payment of his fees.

■ Halverson is entitled to an award of attorney's fees equal to 40% of proceeds

recovered as a result of the fraudulent conveyance proceeding, pursuant to his Court-approved employment contract with the bankruptcy estate. However, the approved agreement was between Halverson and the Debtors' estate, entered pursuant to 11 U.S.C. § 328. The contract is not binding on Cameron, which was not a party to it, and the agreement cannot be the basis for an award payable out of Cameron's lien proceeds. Halverson *may* be entitled to some fees and expenses payable from the lien proceeds under 11 U.S.C. § 506(c), but the request has not been made and it would be inappropriate to determine the matter at this time[6].

### III.

Accordingly, IT IS HEREBY ORDERED:

---

5. In light of appropriately accrued interest to be computed on Cameron's original judgment amount, it is questionable whether any proceeds will remain for the bankruptcy estate after satisfaction of its lien.

6. Interestingly, the adversary proceeding was initially sued out by Cameron under 11 U.S.C. § 544(a)(2) as it incorporates the Minnesota Fraudulent Conveyance Statute. Judge Kishel found, on motion of the Debtors, that Cameron had no standing to proceed under § 544, since that right is vested exclusively in the Trustee. *See: Nebraska State Bank v. Jones,* 846 F.2d 477 (8th Cir.1988); and, *Saline State Bank v. Mahloch,* 834 F.2d 690 (8th Cir.1987). In *Nebraska State Bank v. Jones,* the creditor, who brought a similar suit, apparently argued that his suit was not based on § 544, but that it was based only upon the Nebraska fraudulent conveyance statute. The circuit court responded that:

> However appellant chooses to describe its approach, we agree with the district court that appellant in effect seeks to invoke the avoidance power of 11 U.S.C. § 544.

*Nebraska v. Jones,* at p. 478. The court went on to cite *Saline State Bank v. Mahloch* in support of its holding that a single creditor lacks standing to so proceed. Presumably, Nebraska State Bank was an unsecured creditor. The circuit decision does not disclose that information.

The offending creditor bank in *Saline State Bank v. Mahloch,* the authority relied upon by the court in *Nebraska State Bank v. Jones,* was an unsecured creditor. The Court, in explaining its ruling on the question of standing in *Mahloch,* stated:

> Case law provides ample rationale as to why only the trustee or debtor in possession can invoke the avoidance powers under section 544: (1) *general unsecured creditors* otherwise

would hinder plans to reorganize under chapter 11 ... (2) one group of *unsecured creditors* might benefit to the detriment of other *unsecured creditors* as a result of piecemeal litigation ... and (3) the various motions and cross claims that would inevitably ensue might create needless confusion and inconvenience for all involved.

*Saline v. Mahloch, emphasis added.*

These two cases recognize that individual *unsecured* creditors have no standing to prosecute fraudulent conveyance actions once a bankruptcy case has been filed. The interests of such creditors are subsumed in the interest of the trustee. But the scope of the cases does not appear to be so broad as to preclude standing of a creditor to sue, where the creditor claims an interest in the subject property *superior* to the transferred interest sought to be avoided. Thus, where a lien claimant, such as Cameron, seeks to avoid a conveyance as an obstruction to the recognition or enforcement of its lien on the subject property, it would seem that the lien claimant clearly has standing to sue. In fact, it would seem entirely appropriate for such a creditor to join both the trustee and grantees of the property in a declaratory action, based directly on the state statute, to have the lien claimant's rights and priorities in the property judicially recognized, determined, and enforced.

Indeed, denial of standing has no apparent rational basis. Clearly, the interests of such a lien creditor and the trustee are not the same. This case provides a good example of the difference. Halverson, as Trustee, can hardly be expected to be willing to undertake fraudulent conveyance litigation if Cameron will be the sole-beneficiary of a successful result. Yet, Cameron's interest in the litigation cannot be denied, and it is both unfair and without apparent purpose, to force Cameron to surrender

1. The objection of Cameron Probate Estate to the claim of Farm Credit Services of Mankato is overruled, and the filed claim is an allowed unsecured claim.

2. The objections of Farm Credit Services of Mankato and the Trustee to the claim of Cameron Probate Estate are overruled, and the filed claim is allowed as a secured claim.

3. The application of James Kerr for allowance of attorney's fees from the bankruptcy estate is denied.

4. The application of Mark Halverson, on his own and others' behalf, for an award of fees and costs in the total amount of $40,490.22, is allowed in its entirety against the Debtors' estate, without prejudice against the applicant's seeking further relief under 11 U.S.C. § 506(c).

prosecution of the litigation, in which it has the only real interest, to a stranger who has nothing to gain in the outcome, except possibly attorney's fees and costs.

Perhaps the premise of Cameron's involvement in this litigation was not clearly articulated in response to the motion brought by the Debtors to have the adversary proceeding dismissed for lack of Cameron's standing. Perhaps the Court simply overlooked the distinction between the dissimilar interests in this case and the subsumed interests in *Saline v. Mahloch,* and how that difference relates to the question of standing. Whatever the explanation, it seems clear that Cameron did have standing to prosecute the fraudulent conveyance action in its own right to protect its lien, and that it was deprived of the opportunity to do so. How this might affect consideration of an award of fees to the Trustee's attorney, payable out of Cameron's lien proceeds pursuant to § 506(c), is left for future determination.