In re James MATHIASON, Gladys Mathiason, Debtors.

Mark C. HALVERSON, Trustee, Appellant,

v.

ESTATE OF Earl R. CAMERON, Appellee.

No. 93–1022.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1993.

Decided Jan. 28, 1994.

Counsel who presented argument on behalf of the appellee was Robert E. Hayes of Sioux Falls, SD.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and MAGILL, Circuit Judge.

McMILLIAN, Circuit Judge.

■ Mark C. Halverson, trustee of the bankruptcy estate of James and Gladys Mathiason, appeals from a final order entered in the United States District Court [1] for the District of Minnesota affirming an order entered in the United States Bankruptcy Court [2] for the District of Minnesota denying Halverson's motion to review the extent of a secured lien held by the Estate of Earl Cameron (the Cameron estate) and to surcharge collateral. For reversal, Halverson argues that the bankruptcy court erred in holding that (1) he had waived his objection to the Cameron estate's secured claim on grounds that the underlying lien could not encumber Gladys Mathiason's one-half joint tenancy interest in property of the bankruptcy estate, (2) he had not established cause for reconsideration of the joint tenancy objection pursuant to 11 U.S.C. § 502(j), and (3) he had failed to show that his request to surcharge collateral was both reasonable and necessary as required under 11 U.S.C. § 506(c). As the second reviewing court, our standards are the same as the district court's; we review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987). For the reasons discussed below, we affirm.

## I. Background

In August of 1985, James and Gladys Mathiason (the Mathiasons) conveyed eighty acres of farmland to their son and his wife, Glen and Patti Mathiason. In December of 1985, the Cameron estate obtained a judgment against James Mathiason, Glen Mathiason, and Mathiason Farms, Inc. The Camer-

Counsel who presented argument on behalf of the appellant was Mark C. Halverson of Mankato, MN.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota.

on estate docketed a judgment lien in the amount of approximately $81,000 in February of 1986. In August of 1986, six months after the filing of the Cameron estate lien and just over a year after the Mathiasons' conveyance of the land, the Mathiasons filed for bankruptcy pursuant to Chapter Seven of the United States Bankruptcy Code.

In January of 1988, the Cameron estate initiated adversary proceedings in the Mathiasons' bankruptcy matter to set aside the August 1985 land conveyance. Upon order of the bankruptcy court, Halverson was substituted as plaintiff and eventually obtained a ruling on summary judgment that the conveyance was fraudulent. As a consequence, the property was returned to the bankruptcy estate. Halverson then sold the land for about $88,000.

The Cameron estate filed a claim as a secured creditor, asserting lien rights against the real estate proceeds. An unsecured creditor, Farm Credit Bank of St. Paul (FCB), moved for disallowance of the Cameron estate's claim. FCB argued, among other things, that "any purported lien by the Earl Cameron Estate was of no effect and constituted an unsecured claim pursuant to 11 U.S.C. § 506." In its demand for relief, FCB requested that the bankruptcy court enter an order "disallowing the claim of the Estate of Earl Cameron as a secured claim, determining that such claim is in fact an unsecured claim and providing for that claim to be treated on a basis equal to the other unsecured claims in this case, including that of FCB." Halverson filed a "response" in which he agreed with the substance of FCB's objection and, in his demand for relief, requested that the bankruptcy court "determin[e] the status of the claim of the Earl Cameron Estate." Halverson also applied for attorney's fees of over $39,000 based upon a court-approved contingency fee agreement between himself, as trustee, and the bankruptcy estate. The Cameron estate objected to FCB's unsecured claim and also opposed Halverson's fee request on grounds

that it was excessive and improper in light of his inherent conflict of interest.

By order dated June 10, 1991, the bankruptcy court denied the objections of FCB and Halverson to the classification of the Cameron estate as a secured creditor and ruled "the objections of [FCB] and [Halverson] to the nature of [the Cameron estate's] claim must be overruled. The claim, filed in the amount of $81,000.00, together with accruing interest, must be allowed as a secured claim against the proceeds from sale of the recovered property." *In re Mathiason*, 129 B.R. 173, 177–178 (Bankr.D.Minn.1991). The bankruptcy court further denied Halverson's fee request without prejudice to his right to seek payment pursuant to 11 U.S.C. § 506(c).[3] *Id.* Halverson had ten days from the date of the entry of the order to file a notice of appeal under Bankruptcy Rule 8002. He did not appeal the order.

On August 12, 1991, Halverson moved for a determination of the extent of the Cameron estate's secured claim, arguing for the first time that because the Cameron estate's judgment was not against Gladys Mathiason, the lien did not extend to proceeds from the land sale traceable to her one-half joint tenancy interest in the recovered property. Halverson also moved to surcharge collateral under 11 U.S.C. § 506(c).

By order dated September 6, 1991, the bankruptcy court denied Halverson's requests based upon findings of fact and conclusions of law previously stated by the bankruptcy court at a hearing on August 23, 1991. *Id.* (Sept. 6, 1991). The bankruptcy court held that Halverson had waived his argument regarding Gladys Mathiason's one-half interest by failing to raise it when the court earlier determined the rights of the parties with respect to the Cameron estate's claim and the underlying security upon which that claim was based. Treating Halverson's motion for a determination of the extent of the Cameron estate's judgment lien as a motion for reconsideration, the bankruptcy court denied the motion. The bankruptcy court also held that Halverson's motion to surcharge

**3.** 11 U.S.C. § 506(c) provides: "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and

expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

collateral under 11 U.S.C. § 506(c) failed to meet the statutory requirements of reasonableness and necessity.

Halverson appealed the bankruptcy court's September 6, 1991, order to the district court. The district court considered whether the bankruptcy court had abused its discretion in declining to reconsider its June 10, 1991, order. The district court agreed with the bankruptcy court's determination that Halverson had waived the joint tenancy argument and found no extraordinary circumstances to justify reconsideration. On Halverson's § 506(c) claim, the district court held that the bankruptcy court correctly found that reasonableness and necessity of the fee request had not been shown. By order dated November 18, 1992, the district court affirmed the bankruptcy court's September 6, 1991, order in all respects. *In re Mathiason*, No. 4–91–820 (D.Minn. Nov. 18, 1992). This appeal followed.

## II. Discussion

*Waiver of joint tenancy objection*

■ The bankruptcy court found that the original litigation over the status of the Cameron estate's claim, leading up to the bankruptcy court's June 10, 1991, order, resolved questions concerning the validity and priority of the claim and the extent of the judgment lien as the underlying security. The bankruptcy court found that Halverson had been given a full and fair opportunity to raise all of his legal and equitable objections to the Cameron estate's claim, including his objection that the judgment lien could not encumber a nonjudgment debtor's joint tenancy interest. The bankruptcy court concluded that Halverson's failure to assert this objection as to Gladys Mathiason's one-half joint tenancy interest constituted a waiver. ·

In challenging the bankruptcy court's findings, Halverson maintains that FCB's objection to the Cameron estate's claim, which initiated the proceedings leading to the June 10, 1991, decision, was originally brought as a *contested matter* pursuant to Rule 3007[4] of the Bankruptcy Rules and only addressed whether the claim would be allowed under 11 U.S.C. § 502, not as an *adversary proceeding* pursuant to Rule 7001[5] to determine the secured status of the claim under 11 U.S.C. § 506. Halverson argues that the bankruptcy court's June 10, 1991, ruling therefore could not have addressed issues such as the extent of the Cameron estate's lien. Similarly, Halverson argues that the bankruptcy court's June 10, 1991, ruling only referred to "allowing" the Cameron estate's claim. Specifically, the order states "the claim, filed in the amount of $81,000, together with accruing interest, must be allowed as a secured claim against the proceeds from sale of the recovered property." 129 B.R. at 178 (1991). Halverson argues that it is unclear from this language that the extent of the lien, particularly as to Gladys Mathiason's one-half interest in the recovered property, had been decided. He argues that he reasonably believed that the bankruptcy court intended to provide the parties further opportunity to litigate the secured status of the claim. He also contends that, for these same reasons, he did not appeal the June 10, 1991, order.

In response, the Cameron estate notes that Bankruptcy Rule 3007, governing objections, provides in part "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." The Cameron estate argues that Halverson, by his own actions, transformed the litigation over FCB's objection to the Cameron estate's secured claim into an adversary proceeding. The Cameron estate emphasizes that its claim was specifically filed as a secured claim. FCB objected to the Cameron estate's claim on grounds that the judgment lien "was of no effect," and sought a determination by the bankruptcy court that the Cameron estate claim was unsecured and equal in priority to the claims

---

4. Bankruptcy Rule 3007 provides in pertinent part: "[a]n objection to the allowance of a claim shall be in writing and filed.... If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding."

5. Bankruptcy Rule 7001 provides in pertinent part: "[a]n adversary proceeding ... is a proceeding ... (2) to determine the validity, priority, or extent of a lien or other interest in property...."

of other unsecured creditors. Halverson then responded that he "share[d] the concerns set forth by FCB as stated in its objection to the claim of the Earl R. Cameron Estate." Halverson did not seek disallowance of the Cameron estate claim but rather requested that the bankruptcy court "determin[e] the status of the claim of the Earl Cameron Estate." Under these circumstances, the Cameron estate argues, Halverson's request for a determination of the claim's status automatically put the validity, priority, and extent of the underlying security in issue. Not only did Halverson take this affirmative step, the Cameron estate argues, but he also never objected to the procedures followed by the bankruptcy court. Finally, the Cameron estate argues that, in any case, the June 10, 1991, order clarified the scope of the prior litigation. As evidence of the bankruptcy court's intention to allow the secured claim to the full extent of the Cameron estate's judgment lien, the Cameron estate highlights the language in footnote 5 of the order: "[i]n light of appropriately accrued interest to be computed on [the Cameron estate's] original judgment amount, it is questionable whether any proceeds will remain for the bankruptcy estate after satisfaction of the lien." 129 B.R. at 178 n. 5 (1991).

There is no dispute that the joint tenancy issue was never explicitly raised in the filed written objections to the Cameron estate's secured claim. However, we hold that the objections were joined with a demand for relief of the kind specified in Bankruptcy Rule 7001 when Halverson requested a determination of the "status" of the Cameron estate's claim. Therefore, the litigation became an adversary proceeding under Bankruptcy Rule 3007. *In re Jones,* 122 B.R. 246, 250 (W.D.Pa.1990) (if objection to proof of claim is joined with a demand for relief challenging the validity, priority, or extent of an interest in property, the objection is considered a complaint in an adversary proceeding); *In re National Oil Co.,* 112 B.R. 1019,

1020 (Bankr.D.Colo.1990) (when objection is joined with demand for relief of the kind specified in Rule 7001, the matter becomes an adversary proceeding; hence, the trustee need not commence of a separate adversary proceeding). The fact that the parties did not invoke procedures ordinarily available in an adversary proceeding is not fatal. *See Matter of Chapman,* 132 B.R. 132, 144 (Bankr.N.D.Ill.1991) (where relief sought is of the kind specified in Rule 7001, failure to file as adversary is not fatal); *In re Zobenica,* 109 B.R. 814, 816 (Bankr.W.D.Tenn.1990) (where debtors sought determination of extent of lien and creditors litigated the § 506 issue, bankruptcy court could reach the merits even though debtors did not initiate an adversary proceeding). Halverson therefore had the opportunity to raise the joint tenancy issue at that time. *In re Treadway,* 117 B.R. 76, 85 (Bankr.D.Vt.1990) (an objection to a proof of claim may be treated as an adversary proceeding; the entire adjustment or restructuring of debtor-creditor rights may be determined with finality in one forum). Moreover, any confusion Halverson may have had concerning the nature and scope of the litigation should have been dispelled once he read the bankruptcy court's order. *See* 129 B.R. at 177–178 & n. 5 (1991). Accordingly, we hold that the bankruptcy court correctly concluded that Halverson's failure in the initial litigation to raise the joint tenancy issue, or to timely appeal the order implicitly resolving that issue, constituted a waiver.[6]

*Motion to reconsider*

Halverson also argues, in the alternative, that even if the bankruptcy court's order of June 10, 1991, was a final order as to the extent of the Cameron estate's lien, the bankruptcy court should have reconsidered that order pursuant to 11 U.S.C. § 502(j). Section 502(j) provides in pertinent part: "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsid-

---

**6.** The bankruptcy court did not reach the merits of the joint tenancy issue. We note that the Cameron estate maintains that its secured claim could have attached to Gladys Mathiason's one-half interest in any case because judgment was obtained against the family farm, Mathiason Farms, Inc., and Gladys Mathiason is, by her own admission, the alter ego of the family farm. According to the Cameron estate, in James and Gladys Mathiason's bankruptcy petition, they responded to the question: "Are you known by any other name?" with the answer: "Yes, we are. Mathiason Farms, Inc."

ered claim may be allowed or disallowed according to the equities of the case." Halverson maintains that federal courts have liberally and flexibly applied this standard. He contends that cause to reconsider exists in the present case because a fundamental misunderstanding existed over the scope of the litigation leading to the June 10, 1991, order and the scope of the order itself. Halverson argues that § 502(j) motions for reconsideration are not to be denied solely on the basis of res judicata, and the bankruptcy court's denial on that basis was erroneous.

In response, the Cameron estate argues that the bankruptcy court's decision not to reconsider pursuant to § 502(j) is reviewed for abuse of discretion. Contrary to Halverson's argument, the Cameron estate maintains that the bankruptcy court appropriately refused to reconsider its earlier ruling because cause had not been shown.

█ Abuse of discretion is the appropriate standard to review the bankruptcy court's decision under 11 U.S.C. § 502(j). *See Matter of Colley*, 814 F.2d 1008, 1010 (5th Cir.) (citing *In re W.F. Hurley, Inc.*, 612 F.2d 392 (8th Cir.1980)), *cert. denied*, 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987). We hold that the bankruptcy court did not abuse its discretion in concluding that Halverson had not established cause for reconsideration of the bankruptcy court's June 10, 1991, order. Halverson, together with FCB, elected to challenge the Cameron estate's claim. Pursuant to Rule 3007, Halverson's actions, in effect, broadened the scope of the litigation because he demanded a determination of the status of the Cameron estate's secured claim. It was therefore incumbent upon Halverson to investigate and assert all his available objections at that time. Under these circumstances, cause for reconsideration does not exist where Halverson's sole reason for failing to raise the joint tenancy issue at that time was his failure to appreciate the procedural consequences of his own actions.

█ Moreover, assuming for the sake of argument that the bankruptcy court had reconsidered its June 10, 1991, order, pursuant to § 502(j), we believe that the equities of the case would not have supported a reversal of the outcome. The Mathiasons together fraudulently attempted to convey the property to their son Glen Mathiason, who was also deemed liable under the Cameron estate judgment. Having joined in this fraudulent conveyance of the entire parcel, Gladys Mathiason should not now, as a matter of equity, be permitted to shield her one-half interest in the property from the Cameron estate claim on grounds that she maintains a separate legal interest from her husband.

*Motion to surcharge collateral*

█ Lastly, we review the bankruptcy court's denial of Halverson's motion to surcharge collateral pursuant to 11 U.S.C. § 506(c). Section 506(c) provides "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." Prior to the bankruptcy court's June 10, 1991, ruling, Halverson moved for attorney's fees based upon a court-approved contingency fee agreement between himself, as trustee, and the bankruptcy estate. The bankruptcy court denied Halverson's motion insofar as it attempted to seek recovery of attorney's fees from monies owed to the Cameron estate, a secured creditor not party to the contingency fee agreement. However, the bankruptcy court indicated that it would entertain a motion for attorney's fees under § 506(c), based upon Halverson's successful recovery of the fraudulently conveyed property. Halverson then renewed his motion for attorney's fees, this time under § 506(c), but again relying solely on the contingency fee agreement as the basis for his request. The bankruptcy court denied Halverson's second motion without prejudice to refiling yet another § 506(c) motion. The bankruptcy court held that Halverson had failed to make any showing that his fee request reflected the reasonable and necessary costs of preserving the property for the benefit of the Cameron estate, as required under the statute.

Halverson contends that he is entitled to the contingency fee as a surcharge on the collateral because the Cameron estate impliedly consented to the contingency fee agree-

ment. Citing *In re Brown Bros.*, 136 B.R. 470 (W.D.Mich.1991) (*Brown Bros.*), Halverson maintains that even if the Cameron estate did not consent to the contingency fee agreement, the security for its claim is nevertheless subject to the proposed surcharge because there is no *per se* rule disallowing percentage-based contingency fee payments and, in the present case, the Cameron estate urged Halverson to undertake the litigation to recover the fraudulently conveyed property.

While agreeing that the contingency fee agreement may be valid between Halverson and the bankruptcy estate, the Cameron estate strenuously denies ever expressly or impliedly consenting to the contingency fee agreement with respect to payments from its security. The Cameron estate also notes that it urged Halverson to undertake the litigation to set aside the fraudulent conveyance for the sole reason that he, as trustee, was the only party with standing to do so.

We agree with the bankruptcy court's finding that the contingency fee agreement is not binding upon the Cameron estate and therefore is irrelevant to this § 506(c) inquiry. We review the bankruptcy court's findings of fact regarding the reasonableness and necessity of the surcharge request for clear error. *See In re Senior G & A Operating Co.*, 118 B.R. 444, 448 (Bankr. W.D.La.1990), *rev'd in part on other grounds*, 957 F.2d 1290 (5th Cir.1990). We hold that the bankruptcy court's denial of Halverson's motion to surcharge collateral was correctly decided because Halverson made no relevant showing as to the bases for his request consistent with the requirements of § 506(c). *Brown Bros.* supports the bankruptcy court's ruling because the district court in that case held "the creditor has a duty to pay only to the extent that the expenses satisfy the requirements of 11 U.S.C. § 506(c), regardless of the type of fee agreement made." 136 B.R. at 473. In *Brown Bros.*, the bankruptcy court had denied the § 506(c) claimant's request because he had "failed to submit an itemized report of the type of services rendered, the amount of time spent for each task, etc." and therefore the bankruptcy court was unable to assess the

reasonableness of the request. *Id.* at 474. That is precisely what happened in the present case.

For the foregoing reasons, the order of the district court, affirming the September 6, 1991, order of the bankruptcy court, is affirmed.